ERIKA BIRCH (Bar No.7831)
KASS HARSTAD (Bar No. 8419)
**STRINDBERG & SCHOLNICK, LLC**
802 W. BANNOCK STREET, SUITE 308
BOISE, ID 83702
(t) 208.336.1788
(f) 208.344.7980
erika@idahojobjustice.com
kass@utahjobjustice.com

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **CYNTHIA FULLER,** | |
| Plaintiff, | **COMPLAINT** |
| | **(JURY DEMANDED)** |
| vs. | |
| **STATE OF IDAHO, DEPARTMENT OF CORRECTIONS, BRENT REINKE, in his official capacity, and HENRY ATENCIO, in his official and individual capacity** | Civil No.  1:13-cv-00035 |
| | Judge _____ |
| Defendants. | |

Plaintiff Cynthia Fuller ("Ms. Fuller"), by and through her attorneys, hereby complains against Defendants Idaho Department of Corrections ("IDOC"); Brent Reinke, Director of IDOC; and Henry Atencio, Chief Deputy of Probation and Parole, (collectively "Defendants") as follows:

## I.      NATURE OF THE CLAIMS

1.      This suit is brought by a former employee of the Defendants under Title VII of the Civil Rights Act of 1964, as amended and codified at 42 U.S.C. § 2000e, *et seq*. ("Title VII"); 42 U.S.C. § 1983 ("§ 1983") and the equal protection clause; the Idaho Human Rights Act ("IHRA"); and state law.

2.      Plaintiff seeks all available equitable relief, damages, attorneys' fees, costs, and interest.

## II.      PARTIES

3.      Plaintiff, Cynthia Fuller, is an adult individual, competent to bring this action, a citizen of the State of Idaho, and a resident of Canyon County, Nampa, Idaho.  She was an employee of IDOC at all times relevant herein.

4.      Defendant Idaho Department of Corrections ("IDOC") is an executive department of the State of Idaho, established pursuant to Idaho law. Idaho Code Annotated ("I.C.A.") § 22-201.

5.      Defendant Brent Reinke is the Director of IDOC and is being sued in his official capacity for prospective, injunctive relief, and attorneys' fees and costs under § 1983 and §1988.

6.      Defendant Henry Atencio is the Chief Deputy of IDOC's Parole and Probation Division and is being sued in his official and individual capacities under §1983 and § 1988 for all available relief.

## III.      JURISDICTION AND VENUE

7.      This Court has original jurisdiction under the provisions of 28 U.S.C. § 1331 with respect to Plaintiff's claims arising under federal law. This Court shares concurrent jurisdiction with the Courts of the State of Idaho in matters arising under the Idaho Human Rights Act, Idaho

Code §§ 67-5901 *et seq*. This Court's jurisdiction over Plaintiff's state law claims is founded upon 28 U.S.C. § 1367.

8.    Venue is proper with this Court as Defendant is an executive department of the State of Idaho within the jurisdiction of this Court, and the alleged illegal conduct occurred within the jurisdiction of this Court.

## IV.    GENERAL ALLEGATIONS

9.    Ms. Fuller timely filed a Charge of Discrimination with the Idaho Human Rights Commission ("IHRC") and the Equal Employment Opportunity Commission ("EEOC"), charging Defendant with violations of Title VII of the Civil Rights Act and the Idaho Human Rights Act.

10.    Ms. Fuller filed an amended charge on November 6, 2012. In that amended charge, Ms. Fuller alleged that IDOC had engaged in a pattern or practice of sexual harassment by allowing one of its male employees, Herbt Cruz ("Cruz"), to sexually harass and create a hostile work environment for its female employees and by failing to exercise reasonable care to prevent and promptly correct his behavior.

11.    Plaintiff has received her Notice of Right to Sue and has initiated this action within 90 days.

12.    Defendant IDOC is an employer within the meaning of the Idaho Human Rights Act, Idaho Code § 67-5902(6), and Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq*.

13.    Ms. Fuller began working for IDOC at Idaho State Correction Institute in 2004 as a Correctional Officer.  Several years later, she was promoted to a Sergeant.  In or about January of 2011, she applied for and received a transfer to the Caldwell Division III Probation and Parole Office ("D-3 office").

14.     While working in the D-3 office, Ms. Fuller's immediate supervisor was Orestes Alambra. Mr. Alambra reported to District Manager Kim Harvey, who reported to Deputy Chief Henry Atencio.

15.     In approximately March or April 2011, Cruz, a senior parole/probation officer in the D-3 office, initiated a relationship with Ms. Fuller outside of work. The relationship became romantic. However, neither Cruz nor Ms. Fuller made their relationship known or apparent at the D-3 office.

16.     After dating Cruz for a short-time, Ms. Fuller began to feel that Cruz was becoming overly controlling and emotionally and physically aggressive toward her. As such, Ms. Fuller tried to end the relationship on several occasions, but she was unsuccessful. Ms. Fuller also began seeing a therapist in August regarding her stress, anxiety and fear of Cruz and the relationship.

17.     Upon information and belief, IDOC had previously received complaints that Cruz had sexually harassed and made unwanted sexual advances toward females (including female co-workers and/or subordinates) throughout his career at IDOC. Rather than discipline or terminate Cruz, IDOC transferred him to different offices. Ms. Fuller was unaware of any of these allegations about Cruz when they began dating.

18.     In early August 2011, the Canyon County Sheriff's Office ("CCSO") opened a criminal investigation of Cruz for allegedly raping a woman (not Ms. Fuller).

19.     Supervisors at IDOC were informed of CCSO's criminal investigation in early August 2011.

20.     On or about August 15, 2011, Cruz was placed on paid administrative leave pending CCSO's criminal investigation. IDOC did not inform employees of the nature of the

investigation, and Cruz failed to disclose the true nature of the investigation against him to Ms. Fuller.

21.     At this time, Cruz convinced Ms. Fuller that she needed to disclose their relationship to IDOC supervisors. Cruz told Ms. Fuller to describe the relationship as healthy and consensual. Fearful of Cruz, Ms. Fuller complied with his demand.

22.     On August 16, 2011, Ms. Fuller disclosed her relationship with Cruz to her immediate supervisor Mr. Orestes Alambra ("Mr. Alambra"), and another IDOC supervisor Cassandra Crowl ("Ms. Crowl").

23.     Upon information and belief, certain IDOC supervisors had previously advised Mr. Alambra and Ms. Crowl to "watch out" for Cruz because they had heard allegations that Cruz acted inappropriately and had problems with his female co-workers. Neither Mr. Alambra nor Ms. Crowl informed Ms. Fuller of these concerns, nor did they inform Ms. Fuller that Cruz was being investigated for rape.

24.     On August 30, 2011, Ms. Fuller again attempted to end the relationship with Cruz. In response to her attempt to end the relationship, Cruz kidnapped, beat, raped and sodomized her. Ms. Fuller did not report the incident to law enforcement at that time because she feared for her personal safety.

25.     On or about September 6, 2011, Ms. Fuller contacted Detective Kieran Donahue ("Detective Donahue") at CCSO regarding the pending investigation of Cruz. That same day, Ms. Fuller went to the CCSO police station for an interview with Detective Donahue. She was escorted there by the D-3 District Manager Kim Harvey ("Mr. Harvey").

26.     Mr. Harvey remained with Ms. Fuller while Detective Donahue conducted an interview with her. During the interview, Mr. Harvey informed Ms. Fuller that IDOC Deputy

Chief Henry Atencio ("Mr. Atencio") had approved Ms. Fuller's paid administrative leave, and that Ms. Fuller should take as much paid leave as needed.  Ms. Fuller agreed to accept paid administrative leave, and was later escorted to a safe house by Mr. Harvey.

27.    On September 7, 2011, Canyon County Magistrate Judge Taisey issued a Temporary Ex-Parte Civil Protection Order ("CPO"), restraining Cruz from being within 1,000 feet of Ms. Fuller and the D-3 office in Caldwell.

28.    Despite Mr. Harvey's prior assurances, Mr. Harvey called Ms. Fuller on September 15th and informed her via voicemail that she would not receive paid administrative leave as formerly promised.

29.    Ms. Fuller requested the denial of paid administrative leave in writing. On or about September 19, 2011, Mr. Atencio notified Ms. Fuller via email that she could not be placed on paid administrative leave due to agency policy.  Ms. Fuller was informed she could use accrued vacation or sick time, or alternatively be placed on unpaid leave.

30.    Ms. Fuller was provided leave under the Family Medical Leave Act and used her accrued vacation and sick time concurrently to stay home and recover.

31.    Thereafter, Ms. Fuller exchanged numerous emails requesting paid administrative leave and citing IDOC policy which allowed the department to grant her requests. All requests were denied. Meanwhile, Cruz remained on paid administrative leave.

32.    Ms. Fuller is a single mother of two school age children.  After her accrued paid leave ran out in mid-October, she was forced to return to work due to financial constraints.

33.    On October 18, 2011, Ms. Fuller sent an email to Mr. Atencio, Mr. Harvey and Ms. Roberta Hartz (the Human Resources Supervisor) stating the following:

> It is a sad day when an individual with multiple allegations of sexual assault against him gets to sit at home and collect a check at the tax payer's expense, yet

one of his victims and employee of the very same Department is denied support. It was expressed to me verbally by my District Manager (Kim Harvey), and he said approved by Henry Atencio that I would be allowed to take some time off that would be covered by administrative leave.  I was then contacted at home several days later and advised that the Department of Corrections would not pay me administrative leave because of a Human Resource rule. I have exhausted all leave and am now forced to return to work against my Doctor, Counselor and Attorney's recommendation.

34.     Ms. Fuller returned to work on October 19, 2011.

35.      Shortly after her return to work, Ms. Fuller was advised by Mr. Harvey that she should write another letter to IDOC explaining why she qualified for paid administrative leave. Ms. Fuller submitted that letter on November 7, 2011.

36.     Ms. Fuller met with Mr. Harvey, Ms. Hartz and Mr. Atencio on November 10, 2011, to discuss her written request for paid administrative leave. Ms. Fuller explained that she had used all of her accrued sick and vacation leave to cover the six weeks she was out recovering from the assault, and she requested reinstatement of that leave. Her request was denied.

37.     Ms. Hartz previously had been in a romantic relationship with Cruz, yet she failed to disclose that fact to Ms. Fuller. Additionally, she did not recuse herself from participating in the November 10th meeting. To the contrary, she actively participated in the decision-making related to Ms. Fuller's complaints and requests.

38.     During the November 10th meeting, Ms. Fuller was still extremely fearful of Cruz. As such, she asked her supervisors to send an email to IDOC employees at her facility informing them of the current CPO listing the D-3 office as a location that Cruz was supposed to avoid. Mr. Atencio informed Ms. Fuller that such an email would not be the "right thing to do" since the CPO was temporary, no criminal charges had been filed against Cruz, and he was still an IDOC employee. Mr. Atencio also stated it would not be helpful to alert staff that Cruz had "this kind

COMPLAINT AND DEMAND FOR JURY TRIAL - 7

of situation hanging over his head" should Cruz return to work from paid administrative leave, and that IDOC "had to protect Cruz's reputation."

39.     On November 16, 2011, Mr. Harvey sent an email to IDOC employees stating:

I want to update you regarding Herbt Cruz. As you know, Herbt is on leave pending an investigation.  The investigation is on-going and we hope to bring this to a resolution as soon as possible.  As the investigation is currently underway, Cruz is not allowed in D-3 offices.  If you see him please contact a supervisor.

IDOC staff was never informed of the CPO protecting Ms. Fuller or that Cruz was being investigated for rape. The email was insufficient to notify IDOC employees of the severity of the situation.

40.     Ms. Fuller's office was directly inside the building's main entrance, giving the public (and Cruz) relatively easy access to her office. While her door had a lock, it was frequently open and could be un-locked by coworkers. Ms. Fuller feared that Cruz could simply walk into the D-3 office and attack her.

41.     Ms. Fuller also worried that the D-3 staff underestimated the importance of keeping Cruz off the premises. Specifically, Cruz had been employed at the D-3 office for a long time (especially when compared with Ms. Fuller), and the staff believed that Cruz was under an internal investigation, not a criminal one. Therefore, Ms. Fuller believed that, if Cruz walked in, the staff would likely greet and welcome him in.

42.     Per the email sent out, at most, Cruz's presence would be reported to a supervisor, not police. Ms. Fuller believed that IDOC's refusal to act placed her in significant danger.

43.     After the email was sent, it was clear to Ms. Fuller that IDOC would do nothing to enforce the CPO or protect her from Cruz.

44.     Ms. Fuller felt she could not adequately perform her duties or safely continue to work at IDOC. She had no choice but to terminate her employment on November 17, 2011.

COMPLAINT AND DEMAND FOR JURY TRIAL - 8

45.     At all times during the course of her employment with IDOC, Ms. Fuller performed her job duties in a competent and professional manner, obeyed all rules and regulations set forth by Defendant, consistently met or exceeded standards on performance reviews and was considered a good employee.

46.     After Ms. Fuller was constructively discharged, she applied for unemployment benefits. IDOC contested her application and asserted that Ms. Fuller voluntarily resigned without good cause. As such, Ms. Fuller was denied unemployment benefits on November 27, 2011. IDOC continued to contest Ms. Fuller's unemployment appeals, maintaining that she had voluntarily resigned without good reason. Thus, Ms. Fuller was denied unemployment compensation.

### FIRST CLAIM FOR RELIEF
### (Hostile Work Environment And Constructive Discharge In Violation Of Title VII And The IHRA Against Defendant IDOC)

47.     Plaintiff realleges and incorporates by reference all paragraphs set forth above.

48.     IDOC was aware of allegations (or should have known of such allegations) that Cruz repeatedly sexually harassed female employees. Despite this, IDOC failed to take adequate remedial measures to prevent his on-going sexual harassment within the workplace.

49.     Cruz's behaviors toward Ms. Fuller and other similarly situated women were sufficiently pervasive and/or severe as to create a sexually hostile work environment that IDOC condoned.

50.     IDOC's failure to take appropriate remedial measures, especially once it learned of the criminal rape investigation of Cruz and Cruz's relationship with Ms. Fuller, allowed the hostility (including Ms. Fuller's alleged rape) to continue.

51.     IDOC knew or should have known that: Cruz was under investigation for rape; other IDOC employees had complained that Cruz had sexually harassed female employees; and Ms. Fuller alleged he had raped, sodomized and beaten her. Despite this knowledge, IDOC chose to deny Ms. Fuller paid administrative leave and refused to take basic precautions to make her working environment safe.

52.     IDOC has demonstrated a pattern and practice of fostering a hostile work environment perpetrated by Cruz and others.

53.     IDOC's actions created a hostile environment in which Plaintiff could not perform her job and feared for her own safety.  IDOC's actions ultimately lead to Ms. Fuller's constructive discharge on November 17, 2011.

### SECOND CLAIM FOR RELIEF
**(Gender Discrimination And Disparate Treatment Including Constructive Discharge In Violation Of Title VII And The IHRA Against Defendant IDOC)**

54.     Plaintiff realleges and incorporates by reference all paragraphs set forth above.

55.     IDOC knew or should have known that: Cruz was under investigation for rape; other IDOC employees had complained that Cruz had sexually harassed female employees; and Ms. Fuller alleged he had raped, sodomized and beaten her. Despite this knowledge, IDOC chose to place Cruz on paid administrative leave pending a criminal rape investigation.

56.     IDOC supervisors initially promised Ms. Fuller paid administrative leave while she recovered from the sexual assault.

57.     IDOC then chose to deny Ms. Fuller any paid administrative leave and forced her to use all of her accrued vacation or sick leave to recover.

58.     Once her paid leave ran out, and in order to provide for herself and her children, Ms. Fuller was forced to return to work against the advice of her medical providers, while IDOC chose to keep Cruz on paid administrative leave.

59.     Ms. Fuller repeatedly complained about this disparate treatment and asked IDOC to reconsider providing her some paid administrative leave.  IDOC chose to ignore and/or deny all of her complaints and requests.

60.     IDOC also chose to refuse to appropriately inform Ms. Fuller's workplace of the CPO against Cruz and instruct them to call the police should he violate the court's order.

61.     In doing so, IDOC made clear that it had to protect Cruz's name and reputation, and IDOC chose to protect Cruz's reputation over Ms. Fuller's physical safety and emotional wellbeing.

62.     IDOC discriminated against Ms. Fuller on the basis of gender, and treated her differently than a male employee.

63.     As a result of IDOC's actions, Ms. Fuller was constructively discharge while Cruz remained on paid administrative leave.

### THIRD CLAIM FOR RELIEF
### (Violation Of Equal Protection Clause Of The
### Fourteenth Amendment Against Defendants Reinke And Atencio)

64.     Plaintiff realleges and incorporates by reference all paragraphs set forth above.

65.     At all times relevant, Defendants acted under color of state law when committing the acts complained of.

66.     IDOC has a custom and practice of failing to ensure a harassment free workplace and failing to take appropriate remedial measure to prevent ongoing harassment, including harassment by Cruz.

67.     Defendants Reinke and Atencio knew or should have known that Cruz was under investigation for rape and that other IDOC employees had complained that Cruz had sexually harassed female employees. Despite this knowledge, Defendants Reinke and Atencio failed to take adequate remedial measures, which allowed the hostility (including Ms. Fuller's alleged rape) to continue.

68.     In addition to the knowledge above, Defendants Reinke and Atencio also knew or should have known that Ms. Fuller alleged that Cruz had raped, sodomized and beaten her. Despite this knowledge, Defendant also failed to appropriately safeguard Ms. Fuller by refusing to provide her with paid leave and by refusing to advise other staff members of the CPO.

69.     These actions further contributed to the hostility/discrimination in her workplace. Additionally, IDOC's refusal to provide for paid administrative leave to Ms. Fuller while providing paid administrative leave to Cruz was gender based disparate treatment.

70.     Defendants Reinke and/or Atencio had policymaking authority and exercised that authority in approving the adverse employment actions described above and in violation of the Constitution.

71.      All acts or omissions complained of herein are the result of specific decisions and/or customs and practices of the individual Defendants.   IDOC's conscious and deliberate refusal to protect Plaintiff and others similarly situation violated her right to equal protection.

72.     Defendants' conduct violated clearly established constitutional rights of equal protection of which a reasonable person would have known.

73.     As a result of the Defendants' actions, Plaintiff has suffered and will continue to suffer losses.  Ms. Fuller is entitled to injunctive relief, pursuant to 42 U.S.C. § 1983, *et seq.*,

including but not limited to: reinstatement, back pay and lost benefits, and attorneys' fees and costs as against Defendants in their official capacity.

74.     Additionally, Ms. Fuller is entitled to compensatory damages as against Defendants in their individual capacity.

## FOURTH CLAIM FOR RELIEF
### (Violation Of Article I § 2 Of The Idaho State Constitution Against All Defendants)

75.     At all times relevant, Defendants acted under color of state law when committing the acts complained of.

76.     Defendant failed to take adequate remedial measures in response to notice that Cruz had previously sexually harassed and threatened female employees.

77.     IDOC has a custom and practice of failing to ensure a harassment free workplace and of failing to take appropriate remedial measure to prevent ongoing harassment, including harassment by Cruz.

78.     Defendants knew or should have known that Cruz was under investigation for rape and that other IDOC employees had complained that Cruz had sexually harassed female employees. Despite this knowledge, Defendants failed to take adequate remedial measures, which allowed the hostility (including Ms. Fuller's alleged rape) to continue.

79.     In addition to the knowledge above, Defendants also knew or should have known that Ms. Fuller alleged that Cruz had raped, sodomized and beaten her. Despite this knowledge, Defendants also failed to appropriately safeguard Ms. Fuller by refusing to provide her with paid leave and by refusing to advise other staff members of the CPO.

80.     These actions further contributed to the hostility/discrimination in her workplace. Additionally, IDOC's refusal to provide for paid administrative leave to Ms. Fuller while providing paid administrative leave to Cruz was gender based disparate treatment.

COMPLAINT AND DEMAND FOR JURY TRIAL - 13

81.     Defendants Reinke and/or Atencio had policymaking authority and exercised that authority in approving the adverse employment actions described above and in violation of the Idaho State Constitution.

82.     All acts or omissions complained of herein are the result of specific decisions and/or customs and practices of the individual Defendants.   IDOC's conscious and deliberate refusal to protect Plaintiff and others similarly situation violated her right to equal protection under Idaho law.

83.     Defendants' conduct violated clearly established constitutional rights of equal protection of which a reasonable person would have known.

84.     As a result of the Defendants' actions, Ms. Fuller has suffered and will continue to suffer losses.  Ms. Fuller is entitled to injunctive relief, reinstatement, back pay and lost benefits, compensatory damages, and attorneys' fees and costs.

### FIFTH CLAIM FOR RELIEF
### (Negligent Retention/Supervision Against Defendant IDOC)

85.     Plaintiff realleges and incorporates by reference all paragraphs set forth above.

86.     Upon information and belief, before Cruz was transferred to the D-3 office in Caldwell, IDOC knew or should have known about multiple complaints that Cruz sexually harassed and/or engaged in threatening behavior towards women.

87.     Despite this knowledge, IDOC retained and failed to adequately discipline Cruz.

88.     By early August 2011, IDOC also knew or should have known that Cruz was being criminally investigated for rape. Despite this knowledge, IDOC also failed to take adequate precautions once Ms. Fuller disclosed that she had been dating Cruz on August 16, 2011. Subsequent to IDOC's failure to act, Ms. Fuller alleges that she was kidnapped, beaten, sodomized and raped by Cruz.

89.     As a direct and proximate cause of Defendant's negligence, Ms. Fuller alleges she was sexually and physically assaulted by Cruz.

90.     The act of retaining Cruz occurred within the Defendant's course and scope of their employment, and with malicious intent.

### SIXTH CLAIM FOR RELIEF
**(Intentional and/or Negligent Infliction of Emotional Distress Against Defendant Atencio)**

91.     Plaintiff realleges and incorporates by reference all paragraphs set forth above.

92.     After being sexually assaulted by an IDOC employee, Ms. Fuller was promised "as much paid leave as she needed."  Mr. Atencio later revoked that promise.  Ms. Fuller was forced to use her accrued vacation and sick leave to recover from the sexual assault and to return to work without properly recovering.

93.     Mr. Atencio refused to take basic precautions to protect Ms. Fuller upon her return to work by refusing to inform her coworkers that there was a CPO in place. To maintain her position at IDOC, Ms. Fuller was forced to work in an unsafe environment.

94.     After Ms. Fuller was constructively discharge, IDOC contested her application for unemployment benefits and maintained that she had voluntarily resigned without good case. This resulted in her being denied unemployment benefits.

95.     Defendant's conduct was extreme, outrageous and egregious.

96.     As a direct and proximate cause of Defendant's extreme and outrageous conduct toward Plaintiff, she has suffered, and continues to suffer severe emotional distress.

**WHEREFORE,** Plaintiff respectfully requests that the Court enter judgment in her favor and against Defendants, and award the following relief:

a.     Back pay, in amounts to be determined at trial;

b.     Compensatory (emotional distress) and consequential damages;

c.      Front pay in lieu of reinstatement;

d.      Injunctive and/or declaratory relief;

e.      Pre-judgment and post-judgment interest at the highest lawful rate;

f.      Attorneys' fees and costs of this action, including expert witness fees, as

        appropriate; and

g.      Any such further relief as justice allows.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

        Dated this 22nd of January, 2013.

                                **STRINDBERG & SCHOLNICK, LLC**


                                /s/ Kass Harstad
                                Attorneys for Plaintiff