UNITED STATES DISTRICT COURT

DISTRICT OF IDAHO

CYNTHIA FULLER, )
)
                    Plaintiff, )    No. CV-13-035-JLQ
                                  )
      vs.                         )    MEMORANDUM OPINION
                                  )    AND ORDER RE:
                                  )    SUMMARY JUDGMENT
                                  )
STATE OF IDAHO, DEPT. OF          )
CORRECTIONS, BRENT REINKE,        )
and HENRY ATENCIO,                )
                                  )
                    Defendants.   )
_____ )

BEFORE THE COURT are Defendants' Motion for Summary Judgment (ECF No. 39), Plaintiff's Motion for Partial Summary Judgment (ECF No. 40), and the parties various Motions to Strike supporting evidentiary materials (ECF No. 56, 57, and 71). The court heard oral argument on the matters in Boise, Idaho on September 22, 2014. Kathryn Harstad and Erika Birch appeared for the Plaintiff, who was present. Phillip Collaer and Tracy Crane argued on behalf of Defendants. The court allowed the parties to submit supplemental briefs, which the court has received and considered.

**I. Introduction/Procedural History**

This action was filed on January 22, 2013. Defendants filed an early Motion for Partial Summary Judgment (ECF No. 6) on March 13, 2013. The court granted in part the Motion for Partial Summary Judgment. (ECF No. 19). As a result of that ruling, the following claims remained:

1. The Title VII claims in Counts I and II against IDOC ("Idaho Department of Corrections");

ORDER - 1

2.  The 42 U.S.C. § 1983 claims in Count III against Defendants Atencio and Reinke in their official capacities;

3. The claim in Count VI against Atencio in his individual capacity for negligent/intentional infliction of emotional distress.

## II. **Factual Background**

The court herein recites the basic undisputed Factual Background and will reference the applicable facts in its discussion of the individual claims.

Plaintiff, Cynthia Fuller, (hereafter "Plaintiff" or "Fuller") is a former employee of the Idaho Department of Corrections ("IDOC"). She resigned on November 16, 2011. Plaintiff began working for IDOC as a correctional officer in 2004 and was promoted to Sergeant. In October 2010, she became a probation and parole officer. In 2011, she requested, and received, a transfer to the Caldwell Division III Probation and Parole Office ("D-3 Office"). In March or April 2011, Fuller began a sexual relationship with a co-worker, Herbt Cruz. Plaintiff was aware of a Department of Corrections policy requiring that employees disclose romantic relationships with co-employees, but neither Plaintiff or Cruz disclosed their ongoing relationship to supervisors until sometime after August 15, 2011.

On or about August 1, 2011, a criminal investigation of Cruz was opened in Idaho for allegedly raping another woman (not Plaintiff). On August 15, 2011, IDOC placed Cruz on administrative leave pending the investigation. Plaintiff continued her romantic relationship with Cruz. Plaintiff alleges that thereafter she was assaulted and raped by Cruz on three occasions, the first of which was August 22, 2011. Fuller did not immediately report that alleged assault to her employer or law enforcement and resumed her relationship with Cruz. Plaintiff alleges she was also assaulted by Cruz on August 30, 2011, but that alleged assault was also not reported until September 6, 2011. Despite the assaults, Plaintiff testified that she continued to be "romantically involved" with Cruz, and continued the sexual relationship, until on or about September 3, 2011 when she was

ORDER - 2

allegedly assaulted again by Cruz. (See Fuller Depo. p. 122-125; 140-141)[1]. Fuller reported the Cruz assaults to law enforcement on September 6, 2011. On September 7, 2011, Plaintiff obtained an Order of Protection and took leave from work.

Plaintiff was not allowed paid administrative leave, but was allowed to use her sick leave and vacation time while she was at home. Plaintiff was also offered intermittent leave under the Family Medical Leave Act ("FMLA"). Fuller makes no claim under FMLA. She returned to work on October 19, 2011. Plaintiff alleges that although Cruz was on administrative leave while being investigated concerning the alleged assault on the third-party and she had an Order of Protection, she felt unsafe at work, although Cruz at no time returned to the work place. Fuller claims the IDOC did not take adequate remedial measures to protect her from further contact by Cruz even though no such contact occurred.

On November 10, 2011, Plaintiff attended a meeting with Henry Atencio, Kim Harvey, and Roberta Hartz , supervisors, to discuss further notice to other employees that Cruz was not allowed on the IDOC premises and Plaintiff's request for paid leave. Plaintiff secretly recorded that meeting and a transcript of the meeting is part of the record. (at ECF No. 47-26). At the November 10, 2011, meeting, Fuller told her supervisors that she felt ostracized because her co-workers did not know the full story as to why she had been on leave and had missed POST training. Fuller also stated, "and I believe the supervisors have been very supportive, absolutely." Fuller further stated that although she was now in an "uncomfortable situation," that "the whole thing--I mean, granted, you know, it's not your guys' fault that I - - you know, I got into that kind of relationship." (Tr. p. 32). At the conclusion of the meeting, Atencio stated: "Well, I think

---

[1]Fuller and Cruz also continued to communicate extensively via text message during this time period. The texts were submitted in the record as Fuller deposition exhibit 72 at ECF No. 45-16 and 45-17.

ORDER - 3

the two things we need to do, we'll talk to one of our AG's [Assistant Attorney Generals] about how we can, you know, announce Cruz's not being allowed to be by the building, or in the building, how we can do that legally. And then the other thing is looking at it, again, with paid leave options in the future for you." (Tr. p. 39).

On November 16, 2011, Kim Harvey sent a notice to all District 3 employees informing them that Cruz is "on leave pending an investigation" and that he is "not allowed in the D-3 offices" and that "if anyone sees him, they are to notify a supervisor." (ECF No. 47-40). That very same day, after receiving the e-mail, Plaintiff submitted her "Resignation Memo". (ECF No. ECF No. 47-41). Plaintiff later filed for unemployment benefits. The IDOC contested the claim. An Idaho Department of Labor hearing was held on January 27, 2012, and benefits were denied.

## III. **The Remaining Claims**

The Title VII claims in Count I allege hostile work environment and constructive discharge. (ECF No. 1, p. 9). Plaintiff claims that IDOC "failed to take adequate remedial measures to prevent [Cruz's] on-going sexual harassment within the workplace" and that IDOC's failures to take such measures led to Ms. Fuller's constructive discharge. (ECF No. 1, ¶¶ 48-53). Count II alleges gender discrimination and disparate treatment leading to constructive discharge. Plaintiff complains that she was not offered paid administrative leave, and that Cruz was on paid administrative leave. Count III alleges violation of Equal Protection under the Fourteenth Amendment. Count VI against Atencio alleges that Atencio caused Plaintiff emotional distress by not offering her paid administrative leave, inadequately protecting her in the workplace, and contesting her unemployment application after she was constructively discharged. (ECF No. 1, p. 15). Defendants deny these allegations.

Defendants' instant Motion for Summary Judgment seeks judgment in Defendants favor on the remaining claims. Plaintiff's Motion for Partial Summary Judgment seeks judgment in her favor on Counts I and II.

ORDER - 4

## IV. <u>Standard of Review</u>

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the material facts before the court. *Northwest Motorcycle Ass'n v. U.S. Dept. of Agriculture*, 18 F.3d 1468, 1471 (9th Cir. 1994). The moving party is entitled to summary judgment when, viewing the evidence and the inferences arising therefrom in the light most favorable to the nonmoving party, there are no genuine issues of material fact in dispute. Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). While the moving party does not have to disprove matters on which the opponent bears the burden of proof at trial, they nonetheless bear the burden of producing evidence that negates an essential element of the opposing party's claim and the ultimate burden of persuading the court that no genuine issue of material fact exists. *Nissan Fire & Marine Ins. Co. v. Fritz Companies*, 210 F.3d 1099, 1102 (9th Cir. 2000). When the nonmoving party has the burden of proof at trial, the moving party need only point out that there is an absence of evidence to support the nonmoving party's case. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001).

Once the moving party has carried its burden, the opponent must do more than simply show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the opposing party must come forward with specific facts showing that there is a genuine issue for trial. *Id*.

Although a summary judgment motion is to be granted with caution, it is not a disfavored remedy: "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)(citations and quotations omitted).

## V. <u>Discussion</u>

### A. Count I - Hostile Work Environment and Constructive Discharge

Plaintiff brings her claims in Counts I and II under Title VII which is codified at 42 U.S.C. 2000e-2, which provides in pertinent part:

(a) Employer practices

It shall be an unlawful employment practice for an employer--

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

Plaintiff contends she was subjected to a hostile work environment, and ultimately constructively discharged. This claim is without factual and legal merit. When considering a claim of sexual harassment based on a hostile work environment, there are two primary considerations: "whether the plaintiff has established that she or he was subjected to a hostile work environment, and whether the employer is liable for the harassment that caused the environment." *Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 966 (9th Cir. 2002). Title VII is "not a general civility code." *Manatt v. Bank of America*, 339 F.3d 792, 798 (9th Cir. 2003) citing *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998). To establish a prima facie hostile work environment claim, Plaintiff must show: 1) she was subjected to verbal or physical conduct because of her sex, 2) the conduct was unwelcome, and 3) the conduct was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment. *Manatt*, 339 F.3d at 798. Although Title VII "evinces a congressional intent to strike at the entire spectrum of disparate treatment of men and women in employment," to be actionable, the offending conduct must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Oncale v. Sundowner Offshore Serv.*, 523 U.S. 75, 78 (1998).

ORDER - 6

Plaintiff has not demonstrated that she was subject to a hostile work environment, or that her employer is responsible for the alleged harassment. Plaintiff admits that what she considers the sexual harassment–Cruz' alleged assaultive behavior–occurred outside the workplace. Further, it occurred while Cruz was suspended. Both parties rely upon *Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 966 (9th Cir. 2002), but the case does not aid Fuller. In *Little*, the plaintiff was employed as a "Corporate Services Manager", and she worked with corporate clients providing relocation services for those employees. Little attended a business dinner with a client, and after dinner became ill, passed out, and was raped by the client. When Little told a co-worker, the co-worker advised her not to tell management. When Little told a vice-president of operations of the assault, she advised that she "wished there was something she could do," and would not tell the president, Gayle Glew, unless Little was going to pursue legal action. When Plaintiff told Glew, he told her to speak to his attorneys, and immediately lowered her pay. He then told Little that if the pay cut was not acceptable, "it would be best if she moved on and that she should clean out her desk." *Id*. at 965.

The Ninth Circuit Court of Appeals noted that the "rape occurred at a business meeting with a business client" and that "having out-of-office meetings with potential clients was a required part of the job." *Id.* at 967. The Circuit also stated that, "being raped by a business associate, while on the job, irrevocably alters the conditions of the victim's work environment." *Id*. at 967-68. The court also observed that Little's employer had demoted her and terminated her when she reported the rape. The employer had also failed to take steps to prevent contact between Little and the client. The court found that a jury could find the employer liable for a hostile work environment after the rape "if a jury finds that [the employer] ratified or acquiesced in the rape by failing to take immediate corrective action once it knew or should have known of the rape." *Id.* at 969.

The facts of this case are in stark contrast to *Little*.  Here, Fuller was not sexually harassed while performing the functions of her job.  Rather, viewing the facts in a light most favorable to her, she was sexually assaulted by her co-worker, Herbt Cruz, whom she had been having a consensual sexual relationship with for four-to-six months[2].  These assaults all occurred outside the workplace, and after Cruz had been suspended from work.  Fuller testified that she had no conflicts with her direct supervisor, Orestes Alambra. (Fuller Depo. p. 46).  Further, she could not identify any specific individual she had a conflict with at work, either before or after she was assaulted by Cruz. (*Id*. at p. 47).  When she was assaulted on August 22, 2011, Cruz was already suspended from work.  Unlike in *Little*, Fuller's employer took steps to prevent contact between Fuller and Cruz.  The IDOC notified employees that Cruz was not to be on the premises.  The IDOC conducted an investigation into Cruz' conduct and recommended his termination. Cruz resigned in lieu of termination.  Unlike in *Little*, no adverse employment action was taken against Fuller.  Fuller was not demoted, her salary was not decreased, and she was not terminated.

Plaintiff has not produced evidence to establish that the alleged sexually assaultive conduct by Cruz created a hostile work environment.  Fuller was in a long-standing romantic relationship with Cruz.  The alleged assaultive conduct occurred between August 22, 2011 and early-September 2011. The alleged assaults  occurred

---

[2]For the purposes of summary judgment, the court views the facts in a light most favorable to Fuller and accepts that a jury could find the alleged sexual assaults occurred.  The parties informed the court at oral argument that no criminal charges were ever brought against Cruz for these alleged assaults, and Cruz's affidavit states the same.  The court makes no finding that the assaults did occur, but viewing the facts in a light most favorable to Fuller, finds that a jury could so conclude.

ORDER - 8

outside of the workplace and after Cruz was suspended from the workplace. To succeed on a hostile work environment claim, the "plaintiff must show that the work environment was so pervaded by discrimination that the terms and conditions of employment were altered." *Vance v. Ball State University*, 133 S.Ct. 2434, 2441 (2013). Plaintiff has not established that her employer, IDOC, is liable. "[G]enerally an employer is not liable for the harassment or other unlawful conduct perpetrated by a non-supervisory employee after work hours and away from a workplace setting." *Duggins v. Steak'n Shake, Inc.*, 3 Fed.Appx. 302 (6th Cir. 2001) <u>citing</u> *Candelore v. Clark County*, 975 F.2d 588, 590 (9th Cir. 1992).

Plaintiff has also not demonstrated that IDOC failed to take appropriate remedial action. Cruz was suspended. Other employees were advised he was not to be on the premises. He did not return to the premises or have further contact with Fuller. Termination was recommended, and he resigned in lieu of termination. The Seventh Circuit has stated that when a sexual assault has occurred, "the emphasis of Title VII in this context is not on redress but on the prevention of future harm." *Lapka v. Chertoff*, 517 F.3d 974, 984 (7th Cir. 2008). Stated otherwise, "the emphasis is on the prevention of future harassment" *Id.* The court further stated: "we have noted that taking effective steps to physically separate employees and limit contact between them can make it "distinctly improbable" that there will be further harassment." *Id.* at 985. In *Lapka*, the court found the employer had taken effective steps to separate the co-workers, and in fact the alleged harasser never entered Lapka's workplace again. However, Lapka complained that more could have been done - - Federal Protective Services should have been notified and the employer should have specifically notified the harasser of the protective order. The Seventh Circuit stated: "it is not availing to say that the employer should have taken even more aggressive measures. The measures taken by employers often will not meet the plaintiff's expectations." *Id.* at 985. The court concluded the employer "took

ORDER - 9

reasonable steps in this case; that is enough to justify denial of Lapka's claims." *Id.*

Plaintiff's hostile work environment claim fails for several reasons. Plaintiff has not established severe or pervasive conduct **in the workplace**. Plaintiff complains of no sexually harassing or assaultive conduct that occurred **in the workplace**. Rather, Plaintiff complains that Cruz, a suspended employee, whom she had been voluntarily seeing outside of the workplace, and whom Fuller had been engaged in a several month consensual sexual relationship with, assaulted her. Fuller's only complaint concerning the work environment is that some of her co-workers were not talkative after her leave of absence because they did not understand the circumstances of it. Title VII is not a civility code for the workplace, and the Ninth Circuit has repeatedly held that "ostracism by coworkers does not constitute an adverse employment action, at least where it does not have an effect on the employee's ability to perform her job."*Hellman v. Weisberg*, 360 Fed.Appx. 776 (9th Cir. 2009) citing *Brooks v. City of San Mateo*, 229 F.3d 917, 929 (9th Cir. 2000). The IDOC took effective remedial action against Cruz. Cruz was suspended and IDOC notified co-workers and supervisors that Cruz was not to be on the premises. He did not return to the premises. Any future harassment in the workplace was prevented, and Cruz was forced to resign. Defendants' Motion for Summary Judgment on the hostile work environment claim is **GRANTED**.

1. **Constructive Discharge** - Plaintiff alleges she was constructively discharged from her employment because she no longer felt safe at work. Plaintiff left her employment with IDOC on November 16, 2011. "Constructive discharge occurs when, looking at the totality of circumstances, a reasonable person would have felt that he was forced to quit because of intolerable and discriminatory working conditions." *Watson v. Nationwide, Ins. Co.*, 823 F.2d 360, 361 (9th Cir. 1987). The test is an objective standard. The plaintiff "need not show that the employer subjectively intended to force the employee to resign." *Id*. The Ninth

ORDER - 10

Circuit Court of Appeals has further stated that "a plaintiff alleging constructive discharge must show some aggravating factors, *such as* a continuous pattern of discriminatory conduct." *Id.* The determination of whether conditions were so intolerable and discriminatory as to justify a reasonable employee's decision to resign is normally, but not always, a question of fact for the jury. *Thomas v. Douglas*, 877 F.2d 1428, 1434 (9th Cir. 1989). In *Thomas*, the court found "insufficient evidence...from which a rational trier of fact could conclude" that his working conditions were such that a reasonable person would have been compelled to quit. *Id.* The Ninth Circuit further observed: "It was not unreasonable for [plaintiff] to feel uncomfortable in his situation. His subjective personal discomfort, however, was most likely not the product of any action by [defendants] but, rather, the product of human nature." *Id*.

As stated, *supra,* after reporting the non-work assaults by Cruz, and taking leave in early-September, Fuller returned to work on October 19, 2011. On November 10, 2011, Fuller met with her supervisors Henry Atencio, Kim Harvey, and Roberta Hartz to discuss the issues of Fuller taking additional leave, and again notifying employees that Cruz was not to be on premises. Shortly after Cruz was suspended on August 15, 2011, Kim Harvey had called a staff meeting and "advised everyone that Cruz had been placed on administrative leave because of an ongoing investigation...the details of which were confidential." (ECF No. 44-9, Harvey Depo. p. 100). Harvey additionally informed employees that Cruz "was not authorized to be on the premises that if he was seen, that a supervisor was to be contacted immediately." (*Id.*). At the November 10, 2011, meeting, Fuller stated that her supervisors had been supportive: "I believe the supervisors have been very supportive, absolutely." (ECF No. 47-26, p. 22). Just six days later, on November 16, 2011, Kim Harvey sent out a notice to all District 3 employees informing them that Cruz was "on leave pending an investigation" and that he is "not allowed in the

D-3 offices" and that if anyone sees him, they are to notify a supervisor. (ECF No. 47-40). Fuller submitted a "resignation memo" later that same day, after receiving the e-mail notice.

Plaintiff was not constructively discharged. A reasonable person would not have felt that she was forced to quit because of intolerable and discriminatory working conditions. IDOC provided notice to all employees that Cruz was not to be on site. Plaintiff admits that Cruz surrendered his service weapon at the time of suspension and had not returned to the premises after being suspended on August 15, 2011. (Resp. to St. Of Facts, ECF No. 60, ¶ 5 & 6). Plaintiff describes a work environment where her supervisors were supportive and where she had no specific conflicts with any co-workers–other than Cruz- who was already suspended. Plaintiff has not shown a pattern of discriminatory conduct, nor a workplace situation in which a reasonable person would have felt that she was forced to quit because of intolerable and discriminatory working conditions created by the Defendants. Plaintiff has not met the "high bar" necessary to establish that she was constructively discharged. <u>See</u> *Poland v. Chertoff*, 494 F.3d 1174, 1185 (9th Cir. 2007)("We set the bar high for a claim of constructive discharge because federal antidiscrimination policies are better served when the employee and employer attack discrimination within their existing employment relationship, rather than when the employee walks away and then later litigates whether his employment situation was intolerable."). Defendants' Motion for Summary Judgment on the constructive discharge claim is **GRANTED**.

### B. Count II - Gender Discrimination

Plaintiff's gender discrimination claim pertains to what she sees as unequal treatment between her and Cruz in the provision of administrative leave. She contends that he was given paid administrative leave while under investigation, and that she was "initially promised" paid administrative leave, but then paid

ORDER - 12

administrative leave was denied. (Complaint ¶ 55-63).

A disparate treatment claim under Title VII is analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). *Hawn v. Executive Jet Management*, 615 F.3d 1151, 1155 (9th Cir. 2010). Under *McDonnell Douglas*, a plaintiff must first establish a prima facie case of discrimination. The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the challenged action, and if the defendant meets that burden, the plaintiff must then raise a triable issue of material fact as to whether the defendant's proffered reasons are pretextual. To establish a prima facie case, Plaintiff must show: 1) membership in a protected class; 2) qualified for and performing satisfactorily in her employment; 3) that she experienced an adverse employment action; 4) that similarly situated individuals outside the protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination. *Id*. at 1156. A plaintiff is not required to rely on comparison to similarly situated individuals, but may rely on "other circumstances surrounding the adverse employment action that give rise to an inference of discrimination." *Id.*

Plaintiff has failed to make a prima facie showing. Plaintiff is a member of a protected class. The court also assumes the second element is met, that Plaintiff was performing satisfactorily, although Plaintiff did admit to violating workplace policy by not disclosing her relationship with Cruz. As to the third element, Plaintiff did not suffer an adverse employment action. As set forth *supra*, she was not constructively discharged. Plaintiff was not demoted, nor were her pay or benefits reduced. Plaintiff was not legally entitled to paid administrative leave, and not providing her with such was not an adverse action. Even if the court assumes that not providing Fuller with paid administrative leave was an adverse action, Fuller has

ORDER - 13

not provided evidence giving rise to an inference of discrimination.[3]  At oral

argument, Plaintiff's counsel argued that the inference was established because

different IDOC supervisors gave different reasons as to why the administrative leave

was not provided, and because Plaintiff claims she was initially told she would

qualify, but then was told she did not.  The court disagrees.  No evidence was

provided giving rise to an inference of discrimination.  The decision whether to put

an employee on paid administrative leave was discretionary, and no evidence has

been provided that such discretion was exercised in a discriminatory manner.

Even if the court assumes Plaintiff has made a prima facie showing, or that such

showing was made merely because Cruz and Fuller were co-workers in a sexual

relationship, and Cruz received paid administrative leave and Fuller did not,

Defendants offered legitimate non-discriminatory reasons for the decision.  Fuller

has not created a triable issue that such reasons were pretextual.

The IDOC administrative leave policy provided in pertinent part:

**Paid Administrative Leave**

The Director of the IDOC, in consultation with the director of HRS and the

applicable division chief, **may grant** paid administrative leave under the following

conditions:

1) When the employee is being investigated;

2) When the employee is in the due process procedure of a disciplinary action;

3) [n/a]

4) When a manager (or designee) **deems it necessary** due to an unusual

---

[3]The Ninth Circuit has found that placing an employee on administrative leave can

constitute an adverse employment action. See *Dahlia v. Rodriguez*, 735 F.3d 1060, 1078 (9th Cir.

2013)("We conclude that, under some circumstances, placement on administrative leave can

constitute adverse employment action.").

ORDER - 14

situation, emergency, or critical incident that could jeopardize IDOC

operations, the safety of others, or could create a liability situation for the

IDOC; or

5) [n/a]

(emphasis added) (P's Ex. QQ at ECF No. 47-29).

Cruz was put on paid administrative leave because he was being investigated with termination contemplated–implicating subsections 1 and 2 of the Policy. The investigation was initiated after IDOC found out that Cruz was under investigation by the Canyon County Sheriff's office for an allegation of assault made by another woman, J.W.. He was not suspended on August 15, 2011, for having an undisclosed relationship with his co-worker, Fuller. Fuller argues she should have received leave under subsection 4, "unusual situation". However, any such leave was entirely discretionary - - it "may" be granted, if deemed necessary. Plaintiff was allowed to take vacation and sick time and expended approximately 4 weeks of such time. She was also given intermittent leave under the Family Medical Leave Act.

Brent Reinke, the Director of IDOC, has averred that where an employee is being investigated and suspended concerning possible disciplinary action, an "employee is not allowed to be at work," and therefore "continue[s] to receive all pay and benefits during the time they are not allowed to be at work." (ECF No. 39-4). He further averred that he had received instruction, prior to September 2011, from the State Board of Examiners to be restrictive in exercising his discretion to put employees on paid administrative leave.

The record suggests that there may have been some miscommunication in September, 2011 regarding Fuller's eligibility for paid administrative leave. Plaintiff contends she was initially told by a supervisor that he "did not believe that would be a problem." (P's St. of Facts, ECF No. 44, ¶ 66). Atencio shortly thereafter communicated to Harvey that Fuller would not receive paid administrative leave

"because she does not have any personnel action pending against her." (*Id*. at ¶ 67). This was communicated to Fuller no later than September 19, 2011. (*Id.* at ¶ 70); <u>see also</u> Harvey and Atencio e-mails at ECF No. 47-19 & 47-23). Assuming that Fuller was told she "may" or "might" qualify for paid leave, or that a supervisor "believed" she qualified, such statements are not inconsistent with a discretionary policy and such statements do not evidence a discriminatory intent or motive. The record also reflects that her supervisors continued to evaluate various leave options, and provided Fuller with unpaid leave options, such as FMLA, up through November 16, 2011, when Fuller resigned. The record does not support a conclusion that there was any discriminatory intent or motive behind not providing Fuller with paid administrative leave. Employers are not legally required to always provide paid administrative leave to an employee who makes allegations of misconduct against another employee.

Plaintiff has not provided evidence to support her claim that the decision to provide Cruz paid administrative leave, and not to provide her paid administrative leave was impermissibly based on gender. Defendants' Motion for Summary Judgment on Count II is **GRANTED**.

### C. Count III - Plaintiff's Section 1983 claims against Atencio and Reinke

In this Count, Plaintiff repeats the same factual allegations that underlie Counts I and II and argues that Defendants' conduct amounts to a violation of the Equal Protection Clause. Defendants argue that in order to establish a violation of equal protection, a plaintiff must prove discriminatory intent or motive. Defendants argue that the discretionary decision of Atencio and Reinke to deny Fuller paid administrative leave does not implicate the Equal Protection Clause. Defendants argue that Fuller was treated the same as other similarly situated employees. At her deposition, Fuller testified that she could not identify anyone that had requested voluntary paid administrative leave and had the request granted. (Fuller Depo. p.

180).

For the same reasons discussed, *supra,* in regard to Plaintiff's Title VII claims, this § 1983 claim also fails. Although the analysis under Title VII is not identical to the analysis of an Equal Protection claim under Section 1983, "because both disparate treatment and § 1983 claims require a showing of intentional discrimination, it is unsurprising that summary judgment decisions with regard to § 1983 claims are remarkably similar to their Title VII counterparts." *Keyser v. Sacramento City School Dist.*, 265 F.3d 741, 754 (9th Cir. 2001). Defendants' Motion for Summary Judgment on Count III is **GRANTED.**

### D. Count VI - Infliction of Emotional Distress against Atencio

The Complaint, in Count VI, alleges "Intentional and/or Negligent Infliction of Emotional Distress" (Complaint ¶ 91-96). These are distinct torts and should not be combined in one count. Plaintiff alleges that Atencio "revoked a promise," "refused" to act, and "contested" her unemployment benefits–acts which appear to be intentional. The crux of the allegation is that after the reported assaults by Cruz, Atencio told Plaintiff she could take "as much paid leave as she needed," but then revoked this promise. (*Id*. at ¶ 92). Plaintiff appears to claim she was entitled to indefinite paid leave because she made an allegation of sexual assault against a co-worker, one she had been sexually involved with for several months. Cruz was suspended from the workplace, so Fuller was not required to return to work and work with him. IDOC provided Fuller leave from work. IDOC allowed Fuller to use vacation and sick leave to be absent from work from early-September to mid-October, and then offered her intermittent Family Medical Leave Act ("FMLA") leave.

In Defendant's earlier Motion for Partial Summary Judgment (ECF No. 6), Defendants had claimed that they were entitled to summary judgment on this Count because Plaintiff did not file a timely notice of claim under Idaho Code § 9-605.

ORDER - 17

This Count VI claim is asserted against only Defendant Atencio in his individual capacity. The court set forth in its prior Order (ECF No. 19) a timeline of the relevant events:

- March/April 2011 Plaintiff began a relationship with Cruz;

- August 15, 2011 Cruz was placed on administrative leave;

- August 30, 2011, Plaintiff was allegedly assaulted by Cruz;

- September 15, 2011, Plaintiff was informed orally that she would not receive paid administrative leave;

- September 19, 2011, Plaintiff received written notification from Atencio that she would not receive paid administrative leave;

- October 19, 2011, Plaintiff returned to work;

- November 7, 2011, Plaintiff challenged the denial of leave in writing;

- November 10, 2011, Plaintiff met with IDOC administrators including Atencio and requested reinstatement of sick time and vacation leave that she had used;

- November 17, 2011, Plaintiff ceased her employment; and

- May 14, 2012, Plaintiff filed a Notice of Claim with the Idaho Secretary of State's Office.

These dates are still essentially accurate, but the evidence presented with the current summary judgment motions has provided more information. For example, Fuller alleges she was first assaulted by Cruz on August 22, 2011. Also, Fuller's resignation was submitted the evening of November 16, 2011, not November 17, 2011. Idaho Code § 6-905 provides that all claims against the state or against an employee of the state for any act or omission of the employee within the course and scope of his employment shall be presented to the Secretary of State within 180 days "from the date the claim arose or reasonably should have been discovered, whichever is later." Plaintiff's Notice of Claim was submitted to the Secretary of State 180-

ORDER - 18

days after her last day of employment. Pursuant to Idaho Code 6-905 and 6-908, no claim shall be allowed that has not been timely presented and the "notice of claim requirement is a mandatory condition precedent to bringing suit against the state or its employee." *Overman v. Klein*, 103 Idaho 795, 797 (1982).

Fuller had argued in the prior briefing that the infliction of emotional distress was a continuing tort that continued at least until November 16, 2011, the day she claims she was constructively discharged due to what she alleged was an unsafe working environment. She therefore asserted her claim is timely. Although compliance with the ITCA's notice requirements is mandatory and failure to comply "is fatal to the claim, no matter how legitimate," Idaho courts have extended the time in cases of continuing torts. <u>See</u> *Cobbley v. City of Challis*, 138 Idaho 154 (2002) <u>citing favorably to</u> *Farber v. State*, 102 Idaho 398 (1981)(in suit alleging damages from negligent planning, construction, and design, ITCA notice period began when the project was complete rather than when the project or damage began). Thus, in cases of continuing torts, the Idaho courts have held that the 180-day time period is tolled until the tortious behavior has ceased. However, the Idaho Supreme Court also stated in *Cobbley* that, "upon filing their notice of claim, the [Plaintiffs] could seek damages that resulted during the 180-day period preceding their notice." *Id.* at 159.

In this case, the only acts which occurred within 180-days of the Notice of Claim were the November 16, 2011 e-mail from Mr. Harvey informing employees that Cruz was "on leave pending an investigation" and "not allowed in D-3 offices"; and Plaintiff's alleged constructive discharge on November 16, 2011. (Complaint, ¶ 39, 44). Plaintiff also complains of IDOC contesting her application for unemployment benefits (Complaint, ¶ 93), which would have occurred during the 180-day period. However, Plaintiff has previously admitted that her claim concerning unemployment benefits was not included in her tort claim notice. <u>See</u>

Plaintiff's Response to Defendant's Motion for Partial Summary Judgment (ECF No. 16, p. 12)("It is true that Ms. Fuller did not state in her notice of claim that she was injured because Defendants contested her request for unemployment benefits.").

Defendants have renewed the argument that the claim is untimely. (ECF No. 39-1, p. 19). Defendants also argue that Atencio's conduct was not extreme and outrageous. Defendants argue that Fuller was asked at deposition to describe the actions of Atencio that were wrongful and she stated: "denying paid administrative leave, refusing to disclose the protection order, and denying me unemployment benefits." (Fuller depo, p. 208).

Under Idaho law, intentional infliction of emotional distress requires a plaintiff to show: 1) defendant's conduct was intentional or reckless; 2) the conduct was extreme and outrageous; 3) there was a causal connection between the wrongful conduct and plaintiff's emotional distress; and 4) the emotional distress was severe. *Spence v. Howell*, 126 Idaho 763, 774 (1995). "It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous to permit recovery." *Edmondson v. Shearer Lumber Products*, 139 Idaho 172, 180 (2003) <u>citing</u> Restatement (Second) of Torts § 46. "Although a plaintiff may in fact have suffered extreme emotional distress...no damages are awarded in the absence of extreme and outrageous conduct by a defendant." *Id.* at 179. The Idaho Supreme Court has said that "very extreme conduct" is required before awarding damages for intentional infliction of emotional distress. *Id.* The conduct must go "beyond all possible bounds of decency that would cause an average member of the community to believe it was outrageous." *Id.* at 180.

None of Atencio's alleged wrongful conduct could be found to have been so extreme and outrageous as to go beyond all bounds of decency. Even if the claim is timely, Defendants are entitled to summary judgment on the Intentional Infliction of Emotional Distress claim.

Negligent Infliction of Emotional Distress requires a showing of: 1) a legally recognized duty, 2) a breach of that duty, 3) a causal connection between the defendant's conduct and the breach, and 4) actual loss or damage. *Bollinger v. Fall River Rural Elec. Co.*, 152 Idaho 632, 642 (2012). A plaintiff must demonstrate "physical manifestation of the alleged emotional injury." *Id.* An employer does not breach a legal duty to an at-will employee simply by terminating her, even if such termination is without cause. *Id.*

As this court has stated, *supra,* the only acts which occurred within 180-days of the Notice of Claim were the November 16, 2011 e-mail from Mr. Harvey informing employees that Cruz was "on leave pending an investigation" and "not allowed in D-3 offices"; and Plaintiff's alleged constructive discharge on November 16, 2011 when she resigned. The court has determined, as a matter of law, that Fuller was not constructively discharged. The November 16, 2011 e-mail does not support a claim of negligent infliction of emotional distress, and certainly the e-mail sent by Mr. Harvey does not support such claim against Mr. Atencio.

Defendants also argued that Atencio had immunity from the tort claim Count VI by virtue of Idaho Code § 6-904, which provides in pertinent part: "A governmental entity and its employees while acting within the course and scope of their employment and without malice or criminal intent shall not be liable for any claim...based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused." I.C. § 6-904(1). It appears that this section could foreclose an emotional distress claim based on Fuller's claim that IDOC should have exercised its discretion to provide her paid administrative leave. There has been no evidence produced of "malice or criminal intent" on the part of

ORDER - 21

Atencio.[4]  However, Plaintiff argues that Atencio's decisions were routine operational decisions not entitled to immunity.  Defendants have presented valid argument that Count VI is time-barred and that I.C. § 6-904 provides immunity.  However, the court has, for the purposes of these Motions, resolved those close questions in favor of Plaintiff, and proceeded to the merits of the claims.  The court has addressed the legal sufficiency of this claim and Defendants' Motion for Summary Judgment on Count VI is **GRANTED**.

### E.  Plaintiff's Motion for Partial Summary Judgment

For the reasons stated, *supra,* in granting Defendant's Motion for Summary Judgment on Counts I and II, Plaintiff's Motion is **DENIED**.

### F.  Motions to Strike

Defendants have filed a Motion to Strike (ECF No. 56) portions of the Affidavits of Aleshea Boals, Kim Harvey, and Patty Booth.  Defendants contend the affidavits contain inadmissible hearsay and statements that are speculative, conclusory, and/or about which the affiant lacks personal knowledge.  The court has reviewed the affidavits and given them their appropriate evidentiary weight, if any.  The Affidavits need not be stricken from the record and the Motion is **DENIED**.

Plaintiff has filed a Motion to Strike the affidavits of Catherine Gates and Mark Kubinski. (ECF No. 57).  As to Ms. Gates, Plaintiff argues that she was not disclosed on Defendants' witness list and therefore cannot offer an affidavit.  However, Plaintiff admits that she identified Ms. Gates in Interrogatory responses as someone Mr. Cruz allegedly harassed.  Defendants point out that Ms. Gates was listed on Plaintiff's initial witness list, but removed when Plaintiff filed an amended list.  Mr.

---

[4]Idaho Code 6-903(5) provides "a rebuttable presumption that any act or omission of an employee within the time and at the place of his employment is within the course and scope of his employment and without malice or criminal intent."

ORDER - 22

Kubinski is an attorney in the Idaho Attorney General's Office, and Plaintiff complains he was not earlier disclosed. Mr. Kubinski's affidavit offers no substantive testimony about the facts at issue but merely states that the IDOC has adopted certain workplace policies. There is no prejudice to Plaintiff. In fact Plaintiff states, "the subject matter of Mr. Kubinski's affidavit, Defendant's relevant policies, is not a newly discovered issue." (ECF No. 57-1, p. 4). Plaintiff's Motion to Strike is **DENIED**.

Plaintiff filed a Second Motion to Strike (ECF No. 71) the affidavit of Ms. Dickinson (ECF No. 55-4) that Defendants submitted with their summary judgment response. Plaintiff states that "Ms. Dickinson presents testimony including purportedly sending information to Ms. Fuller regarding disability benefits." Ms. Dickinson's testimony concerning the mailing of a disability claim form to Fuller on October 12, 2011 is not material to the facts at issue and has not affected the court's judgment herein. The Motion to Strike is **DENIED**.

**IT IS HEREBY ORDERED**:

1. Defendants' Motion for Summary Judgment (ECF No. 39) is **GRANTED**.

2. Plaintiff's Motion for Partial Summary Judgment (ECF No. 40) is **DENIED**.

3. Plaintiff's Motions to Strike (ECF No. 57 & 71) are **DENIED**.

4. Defendant's Motion to Strike (ECF No. 56) is **DENIED**.

5. The Clerk is directed to enter Judgment in favor of Defendants dismissing the Complaint and the claims therein with prejudice.

**IT IS SO ORDERED**. The Clerk shall file this Order, enter Judgment in favor of Defendants as directed herein, furnish copies to counsel, and close this file.

Dated this 2nd day of December, 2014.

s/ Justin L. Quackenbush
JUSTIN L. QUACKENBUSH
SENIOR UNITED STATES DISTRICT JUDGE

ORDER - 23