UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CYNTHIA FULLER,<br><br>　　Plaintiff,<br><br>　　v.<br><br>STATE OF IDAHO, DEPARTMENT OF CORRECTIONS, BRENT REINKE, in his official capacity, and HENRY ATENCIO, in his official and individual capacity,<br><br>　　Defendants. | Case No. 1:13-cv-00035-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Plaintiff Cynthia Fuller's Motion in Limine (Dkt. 115) and Defendants Idaho Department of Corrections, Brent Reinke, and Henry Atencio's (collectively "IDOC") Motion in Limine (Dkt. 109).[1]

Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motions without oral argument. Dist.

---

[1] There is a third Motion in Limine filed by Plaintiff under seal (Dkt. 120) as well as an attending motion to seal the motion (Dkt. 119). Due to its confidential nature, the Court will address that motion in a separate, sealed decision.

MEMORANDUM DECISION AND ORDER - 1

Idaho Loc. Civ. R. 7.1(d)(2)(ii). For the reasons outlined below, the Court will GRANT in PART and DENY in PART each Motion.

## II. BACKGROUND

The Court will not set out the lengthy factual and legal history of this case at the present time, but will give a brief overview.

In this case, Fuller alleges that IDOC, through its supervisors, created a hostile work environment under Title VII, because of her gender, based upon their actions following her report that she had been raped by a co-worker—Herbt Cruz, with whom she had a relationship. IDOC denies it created a hostile work environment.

While Fuller originally asserted numerous causes of action, following summary judgment at the District Court and an appeal to the Ninth Circuit Court of Appeals, the sole remaining claim at issue (and the claim that will go to trial), is a hostile work environment claim. In a 2-1 decision, the Ninth Circuit determined that the District Court erred in granting summary judgment to IDOC on Fuller's hostile work environment claim because "a reasonable trier of fact could [] find that the IDOC's actions were sufficiently severe or pervasive to create a hostile work environment." *Fuller v. Idaho Dep't of Corr.*, 865 F.3d 1154, 1164 (9th Cir. 2017), *cert. denied sub nom. Idaho Dep't of Correction v. Fuller*, 138 S. Ct. 1345 (2018).

In anticipation of the upcoming trial, and pursuant to the Court's trial order (Dkt. 108), both parties filed motions in limine seeking to preclude certain evidence and testimony at trial. The Court will address each in turn.

## III. LEGAL STANDARD

"Motions in limine are well-established devices that streamline trials and settle evidentiary disputes in advance, so that trials are not interrupted mid-course for the consideration of lengthy and complex evidentiary issues." *Miller v. Lemhi Cty.*, No. 4:15-CV-00156-DCN, 2018 WL 1144970, at *1 (D. Idaho Mar. 2, 2018) (citing *United States v. Tokash*, 282 F.3d 962, 968 (7th Cir. 2002)). "The term 'in limine' means 'at the outset.' A motion in limine is a procedural mechanism to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009) (quoting Black's Law Dictionary 803 (8th ed. 2004)).

Because "[a]n in limine order precluding the admission of evidence or testimony is an evidentiary ruling," *United States v. Komisaruk*, 885 F.2d 490, 493 (9th Cir. 1989) (citation omitted) "a district court has discretion in ruling on a motion in limine." *United States v. Ravel*, 930 F.2d 721, 726 (9th Cir. 1991). Further, in limine rulings are preliminary and, therefore, "are not binding on the trial judge [who] may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000).

## IV. ANALYSIS

A. Plaintiff's Motions in Limine[2]

---

[2] For brevity, and due to time constraints, the Court will not reiterate each sides' arguments at length as to each individual motion in limine. Rather, the Court will give a simple explanation along with a brief analysis and any relevant parameters. Additionally, the Court's rulings on

1. Exclusion of testimony by defendants that they relied on, or communicated with, the Attorney General's Office when making certain decisions.

**GRANTED**.

Here, Fuller seeks an order from the Court prohibiting IDOC from asserting that they communicated with—or relied upon communications with—the Idaho Attorney General's Office. Even though IDOC has not alleged an "advice of counsel" defense, Fuller contends that because they have not answered pertinent questions or turned over relevant documents related to this topic, they have functionally claimed this privilege which is unduly prejudicial. IDOC counters that they have not asserted this defense and further, that they can shield these communications and documents from disclosure as privileged.

Defendants' strategic choice not to turn over certain documents under an "attorney-client" privilege theory is their right; however, they cannot then use those same materials against Fuller. Because IDOC has all but prohibited discovery on this issue, any inference or suggestion that they contacted the Attorney General's Office will not be allowed at trial. Again, IDOC's choice to take this path is within their discretion, and such is not sanctionable (outside of what is imposed in this decision by way of limiting that evidence) or inappropriate, but IDOC must live with the consequences of their litigation choices.

---

these motions are interlocutory. Depending on how certain evidence is presented at trial—particularly if the "door is opened" for any particular topic—the Court may reconsider its decision.

MEMORANDUM DECISION AND ORDER - 4

2. Exclusion of the fact that Cruz was not charged with a crime.

**GRANTED**.

In this Motion, Fuller asks the Court to prohibit the admission of any evidence that Cruz was ultimately never charged with a crime—either as to J.W. or Fuller. Fuller contends the information is irrelevant and prejudicial. IDOC counters that the information is relevant because Fuller has testified that she was frustrated that Cruz was never charged with a crime and that this frustration might have contributed to her emotional distress.

As will become clearer below, both parties and the Court appear to share a common concern. That concern is that the focus of this case *is not* on Cruz or Cruz's behavior, but on IDOC's behavior. To be sure, Cruz's behavior is what ultimately lead to this case, but the remaining claim at issue goes solely to IDOC's actions—or lack thereof.

This motion is a prime example. Whether Cruz was ultimately charged with a crime is currently irrelevant. If either party believes that the relevancy of this information changes during trial, they can address it outside the presence of the jury and the Court will make a determination at that time.

3. Exclusion of the Idaho Department of Health and Welfare's decision denying Fuller unemployment benefits.

**GRANTED**.

Pursuant to IDOC's agreement on this matter, evidence of IDHW's denial of Fuller's unemployment benefits claim will not be allowed at trial. If IDOC feels that

Fuller has opened the door to this subject, a hearing outside the presence of the jury will be necessary.

    4.  Exclusion of the Idaho Human Rights Commission's Findings and Reports.

**GRANTED**.

Here, Fuller asks the Court to preclude all evidence of the Idaho Human Rights Commission's ("the Commission") report in which it (the Commission) found there was no probable cause to further investigate IDOC and dismissed her case. Fuller claims that this is essentially hearsay, but more importantly, that it would be extremely prejudicial. IDOC agrees that the statements in the report itself are hearsay and inadmissible but argues that the report itself is admissible under various evidentiary rules.

It appears there is a dispute among the Circuits as to whether an EEOC report is per se admissible at trial. Even within the Ninth Circuit, there appears to be a clear distinction between reports that concluded there was probable cause versus reports where no probable cause was found, and a distinction between who is offering the report at trial: Plaintiff or Defendant. Upon review of these cases, it appears that this matter is left to the trial Court's discretion in light of the specific facts of the case.

Here, the Court will not allow evidence of the Commission's report as it may invade—or unduly influence—the purview of the jury. Another fact finder's conclusions—even an agency whose role is part of the process (in that a plaintiff cannot sue until it goes through the Commission's process and receives a right to sue letter)—

should not be imposed upon the jury in this case.[3] Under the circumstances, the Court agrees that introducing the Commission's report would unduly prejudice the jury.

     5.   Exclusion of the outcome of the Sandy Martin case.

**GRANTED** and extended to include Martin's whole testimony.

Finally, Fuller asks the Court to preclude the outcome of a prior civil lawsuit in Idaho filed by another former IDOC employee, Sandy Martin, who—like Fuller—alleges that Cruz harassed her and that IDOC did nothing about it. Judge Winmill ultimately granted summary judgment *against* Martin. Fuller would like this fact excluded but would like Martin to nonetheless testify in order to establish IDOC's purported pattern of "failing to respond to reports of harassment by Cruz which is important circumstantial evidence of gender bias in the work environment." Dkt. 115-1, at 11. IDOC agrees that the final disposition of Martin's case is irrelevant, but further asks the Court to exclude Martin's testimony altogether. Under the circumstances, the Court must agree with IDOC

Although Martin's circumstances are somewhat related to Fuller's (in general substance, but most notably because of Cruz's involvement), this evidence is only tangentially related to the current facts and circumstances and would unduly prejudice the

---

[3] This is somewhat similar to a medical malpractice claim. Such a claim must first be presented to the Idaho Board of Medicine in an "informal and nonbinding" process, Idaho Code § 6-1001, but the Board of Medicine's findings cannot then be used to "prejudice" any party during litigation, Idaho Code § 6-1005. The Court sees value in approaching this issue in a similar manner. The Commission "investigates" and makes "findings," 67-5906(1), and filing a case with the Commission is a condition precedent to litigation. However, that does not take away— or replace—the evidentiary and proof standards utilized in a civil action, nor should it supplant the role of the jury.

MEMORANDUM DECISION AND ORDER - 7

jury. The events in question occurred approximately eight years apart, involve different offices, different supervisors, and ultimately different legal causes of action.

Furthermore, the idea that IDOC purportedly "knew" about Cruz's disposition will come in via other means—specifically the testimony of Kim Harvery—that are more squarely within the scope of the facts of this case.

In sum, not only will the Court grant Fuller's motion, but it will extend the prohibition excluding the outcome of Martin's case to include the whole of Martin's testimony as it is irrelevant and unduly prejudicial.

B. Defendants' Motion in Limine

1. Exclusion of testimony or evidence that Fuller suffered emotional distress as a result of: being raped, IDOC's refusal to advise the staff of a protective order, fear that Cruz would return to the workplace, the denial of paid administrative leave, and IDOC's successful challenge to her unemployment claim.

In its first motion in limine, IDOC seeks a broad order of the Court prohibiting anyone, specifically Fuller's damages expert Dr. Fitzgerald, from presenting testimony or evidence that Fuller suffered emotional distress as a result of numerous factors. IDOC asserts that much of this evidence is related to claims that were dismissed by the Ninth Circuit and allowing this evidence in not only runs contrary to the law of the case but might also confuse the jury. For her part, Fuller argues that IDOC misinterprets certain rulings from the Ninth Circuit but also misstates her overall position. Fuller notes that she is fully aware she cannot recover for damages caused by Cruz but claims that any distress she experienced from his actions was compounded by IDOC's failure to protect her or adequately respond to her situation.

MEMORANDUM DECISION AND ORDER - 8

Again, properly distinguishing between Cruz's actions and IDOC's actions is difficult and concerning to the Court. This is not a sexual harassment case, but a hostile work environment case based on gender. That being said, it is difficult to divorce Cruz's actions from this case—after all, his actions are the foundation of everything that transpired afterwards. The difficulty will be not letting the *background facts of Cruz's behavior* spill over into the legal framework and facts necessary for Fuller's claim against IDOC.

The Court will address each of IDOC's specific requests in turn.

a. Exclusion of emotional distress from being raped by Cruz.

**GRANTED**—with a caveat.

Fuller acknowledges that she "is not entitled to recover emotional distress damages . . . from the assaults themselves" Dkt. 130, at 5, but that she is nonetheless entitled to damages if her conditions (that stemmed from the underlying actions of Cruz) were exacerbated by IDOC. To this end, Fuller proposes that the Court give an "eggshell skull" jury instruction to help distinguish between prior trauma (caused by Cruz and not at issue for damages) and the purported exacerbation of that trauma (caused by IDOC and relevant to damages).

At this time, the Court will not determine if this specific instruction should be given; however, it finds the suggestion well taken. A limiting jury instruction of some type would alleviate IDOC's concerns that any emotional distress rising from facts or circumstances not relevant to IDOC would be attributed to them, but also allows Fuller an appropriate avenue to explain her distress and damages.

MEMORANDUM DECISION AND ORDER - 9

In short, IDOC's motion is granted—Fuller cannot introduce evidence that *Cruz's underlying actions caused her emotional distress*[4] and that distress cannot be attributed to IDOC—however, Fuller can present evidence that IDOC's behavior in relation to those underlying facts did cause her emotional distress. Under those circumstances, the Court would most likely give a limiting jury instruction—such as Idaho civil model jury instruction 9.02—to help distinguish between the two.

    b.  Exclusion of emotional distress from IDOC's refusal to advise the staff of Fuller's protective order against Cruz.

**GRANTED** at this time.

Here, IDOC cites the Ninth Circuit's decision that this evidence fails to support a *constructive discharge* claim and contends it is therefore barred. Fuller points out that IDOC's position fails to appreciate that evidence can be used for multiple claims. The Court agrees. This evidence may not have been sufficient to support a constructive discharge claim, but might support a hostile work environment claim. That said, the Court shares the Ninth Circuit's concern that the protective order was sealed. *See Fuller v. Idaho Dep't of Corr.*, 694 F. App'x 590, 591 (9th Cir. 2017).

---

[4] This seems like a given: a person would be distressed if she had been raped. The tricky part here, however, is distinguishing between that stress, and the stress caused by the subsequent actions of IDOC *in relation to that stress*. Fuller—and Fuller's expert—must be careful in their presentation of this information to the jury.

Simply put, it is not clear that IDOC *could* have informed the staff of Fuller's protective order against Cruz even if they had wanted to.

The Court will not allow this evidence to come in at trial—for purposes of damages[5]—until Fuller has offered a proffer of proof outside the presence of the jury that this would have even been possible due to the sealed nature of the protective order.[6]

> c. Exclusion of emotional distress stemming from a fear that Cruz would return to work.

**GRANTED** at this time.

This assertion is based almost entirely on the above circumstances: Fuller was concerned that, because IDOC did not inform her co-workers of her protective order against Cruz, he might return to work and harm her.

If Fuller can successfully argue that IDOC's failure to inform its staff of her protective order contributed to her damages, this might likewise be admissible for purposes of calculating damages. At the present time, however, it must be excluded.

> d. Exclusion of emotional distress arising out of IDOC's denial of Fuller's request for paid leave.

**GRANTED**.

---

[5] As always, counsel is admonished to carefully read the Court's decision to avoid confusion. For example, here, the Court is not ruling that evidence that Fuller asked IDOC to inform her co-workers of the protective order is completely excluded, but rather that Fuller cannot claim this action contributed to her emotional distress.

[6] The Court does not want a mini-trial on this topic; however, it needs more information than it currently has to make an informed decision on this topic.

IDOC asserts that the Ninth Circuit's ruling that "Fuller has not demonstrated that the IDOC's continued refusal to approve leave for her 'unusual situation'—as opposed to leave granted to other employees under provisions governing investigations or disciplinary actions—was on account of her gender," *Fuller* 694 F. App'x at 591, supports their position that this claim is foreclosed to Fuller.

Again, it is important to note that this ruling was made in the context of Fuller's gender discrimination claim, not her hostile work environment claim. This aside, the reasoning still stands. The fact of the matter is that IDOC had not approved paid administrative leave for anyone who was not on leave due to disciplinary action or under investigation for years prior to Fuller's situation. In context, no reasonable juror could conclude that this fact would cause direct emotional damages as it was not based on her individually, let alone her gender.[7]

      e.  Exclusion of emotional distress arising from IDOC's challenge to Fuller's unemployment claim.

**GRANTED**.

The Court already ruled in Fuller's third motion in limine—based in large part on IDOC's stipulation—that the IDHW decision itself will not be allowed as evidence at

---

[7] Again, Fuller can most assuredly introduce this fact, under the "totality of the circumstances" test in support of her position that it contributed to a hostile work environment and that she was distressed in general—and IDOC can refute this with the fact that the decision had nothing to do with Fuller, let alone her gender—but Fuller cannot introduce this at all in support of damages.

MEMORANDUM DECISION AND ORDER - 12

trial unless the door is opened. Similar to the IHRC report, this IDHW report is based upon a different standard than used here and might unduly influence the jury.

Additionally, like the other topics discussed above, the Court will not allow this information in for purposes of damages as it is not directly related to the hostile work environment claim. If an expert from either side plans to testify as to the apportionment of damages from the IDHW decision itself and IDOC's behavior—and can articulate a reason the Court should allow this information in—the Court will reconsider this decision. Until that time, however, no evidence or testimony that Fuller suffered damages from IDOC's challenge to her unemployment claim will be allowed. As always, if either party wants to revisit this subject, it must first do so outside the presence of the jury.

In summary, it is difficult to divorce these specific facts IDOC wants excluded for purposes of damages when they will naturally come out as part of the background in this case and are necessary for the jury's decision on the hostile work environment claim. IDOC's motion notes repeatedly that their request only seeks an order precluding Fuller from using this evidence *as a basis for damages*, and not that it is seeking to preclude it altogether—nor could it, as much of this information is part of exhibits and testimony that has been stipulated to. However, in her response, Fuller's arguments often sweep more broadly, as if IDOC has sought to preclude this evidence all together. To be clear, the Court's decision as to the inadmissibility of certain evidence (or of the possible introduction of other evidence) is made solely with damages in mind.

The Court admonishes the parties to ensure that their witnesses are aware of this ruling, and further, that the questions and answers on these topics—specifically as it

MEMORANDUM DECISION AND ORDER - 13

relates to damages—makes a clear distinction between Cruz's behavior (and the attached distress) and instead focuses on IDOC's behavior (and any connected stress).

In sum, this particular motion is **GRANTED in PART and DENIED in PART**. Specifically, any evidence presented in support of emotional distress for the purposes of calculating damages[8] must be related to the sole remaining claim in this case—a gender hostile work environment—and must be connected to IDOC (along the lines of the so-called "institutional betrayal" theory), not connected to Cruz.

Finally, the Court notes that its decision today does not foreclose either party from making a motion to include a limiting jury instruction that explains that evidence can only be considered for certain purposes (such as liability) but not for other purposes (such as damages).

> 2. Preclusion of evidence and testimony regarding front pay and back pay.

**GRANTED**.

Both sides agree that the issues of front pay and back pay will not be addressed at trial. Nonetheless, Fuller notes that she may take this up after trial. Both sides appear to have relevant case law on the topic—specifically whether front pay and back pay awards are allowed and the appropriate standards. This matter will be addressed after trial, if necessary.

---

[8] If Fuller chooses to testify, it is her right to give her opinion that the situation overall contributed to her mental state and distress, but she cannot pinpoint certain facts as appropriately supporting emotional distress against IDOC, nor can her expert.

MEMORANDUM DECISION AND ORDER - 14

3. Preclusion of damages related to counseling or emotional distress caused by Cruz.

**GRANTED** at this time.

This request is essentially a specific request under IDOC's first motion in limine—subpart "a"—above. Accordingly, the same analysis applies. Fuller acknowledges that she cannot recover for Cruz's actions themselves, but asserts she can recover if those feelings were exacerbated by IDOC. That said, the Court cannot fully rule on this specific issue at this time. The Court does not know the extent of the testimony regarding Fuller's counseling and whether any reason for the counseling can be attributed to IDOC. Accordingly, this motion is granted based on the information currently before the Court, however, the Court will revisit this decision during trial if necessary.

4. Limitation of evidence and testimony to only events occurring between September 5, 2011, and November 16, 2011.

**DENIED**.

In this motion, IDOC seeks an order of the Court limiting all testimony and evidence to a period that they believe concisely covers the events in question. This timeline, however, seems somewhat arbitrary and would in fact preclude evidence that IDOC otherwise desires.[9] In short, both parties have identified relevant evidence outside of this timeframe.

---

[9] For example, as outlined in the sealed decision in this case, IDOC wants to introduce text messages between Fuller and Cruz from outside the currently proposed timeframe. Additionally,

Importantly, as Fuller notes—and relying on the Ninth Circuit's decision in this case—the test at issue is a totality of the circumstances test and in order to understand the scope of everything that took place in this case, the jury must be presented with information, evidence, and testimony, outside of the limited range IDOC suggests.[10]

>   5. Exclusion of testimony or evidence concerning third-party sexual harassment claims.

**DENIED.**

In its final motion, IDOC requests that the Court exclude all testimony and evidence of third-party claims against Cruz as it is immaterial and would be unduly prejudicial. The Court disagrees. This evidence is highly probative of whether Fuller was subjected to a hostile work environment based on her gender, specifically if there was a pattern of gender discrimination at IDOC. As the Ninth Circuit noted:

> The IDOC's knowledge of previous sexual harassment complaints against Cruz, 'while alone insufficient to create a hostile work environment, 'is relevant and probative of [the IDOC's] general attitude of disrespect toward [its] female employees.' *Zetwick*, 850 F.3d at 445 (quoting *Heyne v. Caruso*, 69 F.3d 1475, 1479–81 (9th Cir. 1995)). Because Fuller learned after she was raped that the IDOC was aware of Cruz's 'history of this kind of behavior,' she reasonably could have believed that the IDOC would continue to support Cruz at the expense of its female employees.

---

IDOC has already stipulated to certain exhibits and evidence which occurred outside of these dates.

[10] Of course, this information, evidence, and testimony must be admissible, i.e., relevant and supported by proper foundation.

*Fuller v. Idaho Dep't of Corr.*, 865 F.3d 1154, 1162 (9th Cir. 2017). The Court's ruling on this motion must be taken in conjunction with its ruling regarding Sandy Martin and her testimony. The Court is allowing testimony that IDOC knew of other instances of allegations against Cruz—such as the criminal allegations against J.W., the complaints from other staff that they didn't want Cruz positioned there because of his behavior,[11] and Kim Harvery's testimony—but still finds Martin's situation too tangential to be appropriately presented in this case.

## V. ORDER

The Court HEREBY ORDERS:

1. IDOC's Motion in Limine (Dkt. 109) is GRANTED in PART and DENIED in PART as outlined above.

2. Fuller's Motion in Limine (Dkt. 115) is GRANTED in PART and DENIED in PART as outlined above.

DATED: January 25, 2019

_____
David C. Nye
Chief U.S. District Court Judge

---

[11] The timing and location of these reports (as well as the relevant actors) are more closely related to the facts in this case, and Fuller herself, than the actors and allegations in the Martin situation.