Kass Harstad (ID Bar No. 8419)
Erika Birch (ID Bar No.7831)
**STRINDBERG & SCHOLNICK, LLC**
1516 W. Hays Street
Boise, ID 83702
Telephone:    (208) 336-1788
Facsimile:    (208) 287-3708
*kass@utahjobjustice.com*
*erika@idahojobjustice.com*

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **CYNTHIA FULLER**, <br><br> Plaintiff, <br><br> vs. <br><br> **STATE OF IDAHO, DEPARTMENT OF CORRECTIONS, et al.**, <br><br> Defendants. | **PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS** <br><br> Case No. 1:13-CV-00035-DCN <br><br> Honorable Judge David C. Nye |

Plaintiff, Cynthia Fuller, by and through her counsel hereby submits this Memorandum supporting her Motion for Attorneys' Fees and Costs pursuant to Rule of Civil Procedure 54 and Local Civil Rule 54.2.

## I.    INTRODUCTION

Ms. Fuller's hostile work environment claim is brought pursuant to Title VII of the Civil Rights Act of 1964. As was presented during trial, Ms. Fuller's claim arises from her treatment by Idaho Department of Corrections (IDOC) and its officials/employees subsequent to her report

to Canyon County Sherriff's Office (CCSO) of domestic violence and sexual assault by IDOC

co-worker Herbt Cruz.

## II.    PROCEDURAL BACKGROUND

Ms. Fuller filed this action in federal court on January 22, 2013, over six (6) years ago.

Ms. Fuller retained the undersigned almost a year prior, in February of 2012, to represent her

through the Idaho Human Rights Commission process related to her charge of discrimination.

Thus, the undersigned firm, and Erika Birch and Kass Harstad in particular, have represented

Ms. Fuller for over seven years. *See Declaration of Erika Birch (Birch Dec.)* at ¶ 2.

In her original *Complaint*, Ms. Fuller alleged claims under Title VII, § 1983, and various

state law claims against IDOC, Mr. Reinke (in his official capacity) and Mr. Atencio (in his

official and individual capacity). Some of Plaintiff's state law claims were voluntarily dismissed

without prejudice in an early summary judgment order (Dkt. # 19).[1]  The case then proceeded

through the discovery process. *See* Section III.B.1. for a summary of the discovery.

On December 2, 2014, Judge Quackenbush granted summary judgment in IDOC's favor

on all of Ms. Fuller's remaining claims (Dkt. #82). Ms. Fuller appealed the dismissal to the Ninth

Circuit Court of Appeals.  On July 31, 2017, the Ninth Circuit issued its Opinion which vacated

summary judgment as to Ms. Fuller's hostile work environment claim and remanded the same

for trial. *See* Appeal Dkt. #47-1. Specifically, the Ninth Circuit held "that Fuller proffered

sufficient admissible evidence to avoid summary judgment, and we remand for a trial on her

hostile work environment claim." *Fuller v. IDOC*, 865 F.3d 1154,1158 (9th Cir. 2017).  The

Ninth Circuit outlined the claims it affirmed summary judgment on in a separate memorandum

---

[1] In that *Order*, the Court also struck Plaintiff's request for back pay against Reinke and Atencio
in their official capacities. *Id*. at p. 4-5.

disposition. *See* Appeal Dkt. #48; *Fuller v. IDOC,* 694 Fed. Appx. 590 (9th Cir. 2017). Specifically, the Ninth Circuit affirmed summary judgment on Ms. Fuller's disparate treatment claims, her constructive discharge, her claims that IDOC could be held liable for Cruz's rapes of her, and her claim that Atencio negligently inflicted emotional distress on her. However, in dismissing those claims, the Ninth Circuit recognized that the facts in those claims were relevant to her hostile work environment claim. *Fuller*, 865 F.3d at 1162-63, n.3. In that memorandum, the Court did not specifically address Ms. Fuller's equal protection hostile work environment claims. *See Id.* at n. 2.[2]

IDOC filed *a Petition for Rehearing or Rehearing En Banc*, Ms. Fuller opposed the Petition, and the Court denied both a panel rehearing and an en banc rehearing. *See* Appeal Dkt. #54. The Ninth Circuit issued its Mandate on October 13, 2017 and **taxed IDOC with costs of $278.30**. *See* Appeal Dkt. #55. IDOC never paid nor tendered the costs to Ms. Fuller. *See Birch Dec.* at ¶ 20.

On remand, the case was eventually reassigned to Judge David C. Nye. During a status conference on December 20, 2017, the Court set the case for a 7-day jury trail for May 29, 2018 as that was the earliest trial date that defense counsel could be available. IDOC did not mention during the status conference or otherwise that it was planning or considering filing an appeal to the United States Supreme Court. *See Birch Dec*, ¶ 22. Thus, the Court entered a Trial Order on January 3, 2018. *See* Dkt. #102. That same day, IDOC filed a petition for writ of certiorari which

---

[2] Thus, Ms. Fuller filed a *Motion for Clarification* asking the Ninth Circuit to make clear that her hostile work environment claim under *both* Title VII and § 1983 were remanded for trial. *See* Appeal Dkt. #44. The Court denied Ms. Fuller's motion "without prejudice to filing a petition for panel rehearing or rehearing en banc." *See* Appeal Dkt. #46.

was placed on the Supreme Court docket on January 8, 2018. Thus, the May trial was stayed. *See* Dkt. #105.

Neither Ms. Birch nor Ms. Harstad had been admitted to the United States Supreme Court. The Firm associated with Professor Eric Schnapper, who is a well-known Supreme Court appellate lawyer and academic in the employment law field. *See Birch Dec.* at ¶ 23. On February 21, 2018, Plaintiff filed her *Brief in Opposition* to IDOC's cert. petition. The Supreme Court denied IDOC's petition on March 26, 2018, and the case was remanded back to District Court. *See* Dkt. #106. The Court reset the case for trial for February of 2019.

A jury trial in this case was held from February 4-14, 2019. The jury unanimously returned a verdict in Ms. Fuller's favor, finding IDOC liable for creating a gender hostile work environment. The jury awarded Ms. Fuller $1,800,000 in compensatory damages. *See* Dkt. #158. On March 26, the Court entered Judgment. *See* Dkt. #159. On March 29, 2019, IDOC filed a *Motion for Remittitur* asserting a cap of $300,000 under Title VII, and that the verdict was excessive. *See* Dkt. #160-61.

Ms. Fuller now seeks an award of attorneys' fees including expert fees and un-taxed costs pursuant to 42 U.S.C. § 1988 (b) & (c), and 42 U.S.C. § 2000e-5(k).

### III.   ARGUMENT

The purpose of § 1988 is "to ensure that federal rights are adequately enforced." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 550 (2010). Thus, in civil rights actions brought pursuant to Title VII for compensatory damages under § 1981a, the Court may allow the prevailing party a "reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). A reasonable attorney fee is one that "is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Perdue*, 559 U.S. at 552. Further, the Court may include expert

fees as part of the attorney's fee. *See* §1988(c). The U.S. Supreme Court has recognized that, unless special circumstances would render an award unjust, a "prevailing plaintiff should ordinarily recover an attorney's fee." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). Therefore, "a court's discretion to deny fees under § 1988 is very narrow and . . . fee awards should be the rule rather than the exception." *Herrington v. County of Sonoma,* 883 F.2d 739, 743 (9th Cir.1989) (internal quotation marks omitted). Additionally, "the most critical factor is the degree of success obtained. If the complainant has achieved excellent results, [s]he is entitled to a full compensatory fee award, including time spent on other matters on which [s]he did not win." *Hensley*, 461 U.S. at 435. As set forth below, Ms. Fuller prevailed on her hostile work environment claim tried to the jury achieving excellent results. She is the prevailing party and is entitled to recover her full attorneys' fees including expert fees and other related costs.

Awarding attorneys' fees entails a three-part analysis. First, the plaintiff must be the prevailing party. *See Fischer v. SJB-P.D. Inc.,* 214 F.3d 1115, 1119 (9th Cir. 2000). Second, the Court calculates the "lodestar figure" by multiplying a reasonable rate by the number of hours reasonably expended. *See id.* Finally, the Court considers whether the lodestar amount should be enhanced or reduced. *See id.*

### A.      Ms. Fuller is the Prevailing Party

The "prevailing party inquiry does not turn on the magnitude of the relief obtained." *Farrar v. Hobby*, 506 U.S. 103, 114 (1992); *see also Stivers v. Pierce*, 71 F.3d 732, 751 (9th Cir. 1995) (stating that "the degree of success is irrelevant to the question whether the plaintiff is the prevailing party"). Rather, Ms. Fuller is the "prevailing party" if she succeeded on "any significant issue in the litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley*, 461 U.S. at 433. Here, the jury unanimously found in her favor and

awarded a significant emotional distress award of $1,800,000 and judgment has been entered

against IDOC. Thus, Ms. Fuller is clearly the prevailing party as her successful suit produced a

"material alternation of the legal relationship between the parties,"[3] in that she obtained an

enforceable judgment. *Farrar*, 506 U.S. at 111.

> **B.     The Lodestar Amount**

After determining that a prevailing party is entitled to fees, the Court must determine

what attorneys' fees are reasonable. *See Hensley*, 461 U.S. at 433.  The starting point of this

analysis is to calculate the "lodestar" amount by multiplying the number of hours reasonably

expended on the litigation by a reasonable hourly rate. *See id.; Morales v. City of San Raphael*,

96 F.3d 359, 363 (9th Cir. 1996), *opinion amended on denial of reh'g*, 108 F.3d 981 (9th Cir.

1997).

As set forth Ms. Birch's Declaration, Strindberg & Scholnick's representation of Ms.

Fuller has always been on a contingency-fee basis because she could not afford to pay on any

other basis. *See Birch Dec*. at ¶ 2. Under the fee agreement[4], Ms. Fuller is/was responsible for

paying all the costs and expenses, notwithstanding whether she was successful on her claims.

Given Ms. Fuller's financial status, the firm has advanced the costs and expenses on her behalf.

*Id*.

 The Firm contemporaneously tracked all time spent on Ms. Fuller's case. The number of

hours billed, after exercising review and discretion to write off certain time spent on the case,

---

[3] *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 604 (2001).

[4] Pursuant to the fee agreement, the firm's contingency percentage is 45% (up from 40% because of the appeals) of her gross recovery (any damage award plus the fee award), **or** the amount of attorneys' fees awarded, whichever is greater. *Id*. at ¶ 2, n.1.

total 3,923.92 billable hours to date including Professor Schnapper's time on the cert. petition. *See Birch Dec*., at ¶ 13. At the respective reasonable hourly rates for the involved attorneys/paralegals, a lodestar figure through April 4, 2019 is $999,564.50 in attorney's fees.[5] *See Birch Dec.* at ¶ 13. "There is a strong presumption that the lodestar figure represents a reasonable fee." *Harris v. Marhoefer*, 24 F.3d 16, 18 (9th Cir. 1994); *see also Oviatt v. Pearce,* 954 F.2d 1470, 1482 (9th Cir. 1992).

> *1. The number of hours expended were reasonable.*

Employment discrimination is a specialized area of the law, which involves developing case law[6], ongoing legal research and the difficult task of proving intentional discrimination. Because the employer has most of the relevant information, plaintiffs must conduct significant discovery in discrimination cases as they typically only have access to the documents and witnesses through the discovery process. *See Birch Dec*. at ¶ 11; *See Declaration of DeAnne Casperson* ("*Casperson Dec.*"), at ¶ 8; *Declaration of Howard Belodoff* ("*Belodoff Dec.*"), at ¶ 7. Expert discovery is also typical in employment cases including damages experts like those involved in this case.

In this case, the firm represented Ms. Fuller through the charge process, exhausting her administrative remedies. After filing the *Complaint*, Plaintiff faced an early motion for summary judgment. The former judge in this case required the parties to file trial witness lists during the discovery period. Plaintiff deposed ten non-expert witnesses, all of whom worked for IDOC at the time and/or were purportedly being represented by defense counsel. Additionally, all ten of

---

[5] Plaintiff will supplement her fee petition with all time spent on the post-trial matters including this petition at the time of her Reply or thereafter if necessary.

[6] For example, in the 2017-18 US. Supreme Court term, the court handed down nine cases that dealt with or impacted employment law issues.

the witnesses deposed appeared as witnesses at trial, supporting that those depositions were necessary to the claim tried. Defendant deposed three witnesses, and two of those witnesses were called as trial witnesses. Nearly 10,000 pages of documents were exchanged in non-expert discovery, along with various videos and recordings from the OPS and CCSO investigations. This case also overlapped with CCSO's criminal investigation of Herbt Cruz, such that discovery also involved the criminal case records and evidence. *See Birch Dec*. at ¶ 11.

Plaintiff retained expert witness Dr. Louise Fitzgerald and an economic damages expert. Defendant retained expert witness Dr. Craig Beaver, who was deposed by Plaintiff, and an economic damages expert. Both Dr. Fitzgerald and Dr. Beaver conducted psychological testing and evaluations of Ms. Fuller which were produced during expert discovery. *See Birch Dec*. at ¶ 25.

After discovery, Defendants filed another motion for summary judgment and Plaintiff filed a motion for partial summary judgment. The briefing by both parties were factually and legally dense. After oral argument on summary judgment, there was additional briefing. *See Birch Dec*. at ¶ 12.

After the case was dismissed and, as stated above, there was additional extensive work on appeal before the Ninth Circuit and the United States Supreme Court.[7] The work that goes into an appeal is substantial, especially as an appellant. The briefing involves complex legal analysis and a myriad of facts. *See Casperson Dec*., at ¶ 9. The amount of time/fees requested related to the Ninth Circuit appeal is 640.40 hours ($197,810.50). *See* Exhibit 3 attached to *Birch Dec.* By associating with an experienced Supreme Court appellate lawyer, Professor Schnapper, the time

---

[7] This included filing an *Opening Brief* and a *Reply Brief* and opposing a P*etition for Rehearing and En Banc Review* before the Ninth Circuit, as well as a *Brief in Opposition* to IDOC's *Petition for Writ of Certiorari* before the U.S. Supreme Court.

spent by the Firm on the *Opposition* to the cert. petition was minimized. *See Birch Dec*. at ¶ 23. Additionally, given his myriad of experience appearing before the Supreme Court, Professor Schnapper was able to efficiently work on the *Opposition*. *See Schnapper Dec.* at ¶¶ 7-8, 10. The total amount of time requested for both the Firm and Professor Schnapper's work on the *Opposition* to the cert. petition is 135.25 hours ($84,844.25). *See Birch Dec.*, ¶¶ 21, 23-24, and Exhibit 4 attached thereto; *Schnapper Dec.* ¶ 10, and attached records.

This Court is familiar with the parties' pretrial submissions, which were substantial and including various motions in limine, a trial brief, proposed jury instructions and voir dire, designations of deposition testimony, exhibit and witness lists and objections to the same, and an offer of proof. *See* Dkt. ## 109-142. During the eight trial days, 14 witnesses were presented by Plaintiff and 5 witnesses by Defendant. As the Court may recall, the jury selection process was quite lengthy and included a *Batson* challenge. The amount of time requested related to the post-appeal litigation including the trial work is 1,541.55 hours ($404,712.50) through April 4, 2019. *See* Exhibit 5 attached to *Birch Dec*.

Additionally, it is worth mentioning that despite Plaintiff's overtures toward settlement at various times throughout the litigation, the only time Defendants made an offer to settle the case was during a mediation session in January of 2018 after the Ninth Circuit had remanded the case for trial. During the mediation, IDOC's highest offer made was less than six-figures, despite the fact that they were aware that Plaintiff's attorneys fees at the time were in the mid-six figures. *See Birch Dec.,* ¶¶ 16-17, 36.

As recognized by the Ninth Circuit, "lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee. It would therefore be the highly atypical civil rights case

where plaintiff's lawyer engages in churning." *Moreno v. City of Sacramento*, 534 F.3d 1106,

1112 (9th Cir. 2008). As U.S. Representative Susan Wild, a former employment **defense**

attorney for 30-years, said on the house floor recently:

> Representing plaintiffs in employment cases is a very hard job. These lawyers
> work for every penny they earn. They take cases that put their own livelihood at
> risk. Many employment cases take years to resolve. Often they have to go to
> court over and over to litigate discovery and pretrial matters and all the while they
> are not collecting a paycheck from that case because they have taken it on a
> contingent fee basis. Without an award at the end of the case, they receive
> nothing. And they advance out-of-pocket expenses. But even more important,
> without these lawyers, low-income, female employees with legitimate grievances
> would have no recourse. Only with a competent lawyer's help can they proceed. .
> ..

House Session March 27, 2019 regarding H.R. 7 - Paycheck Fairness Act.[8]

Here, Plaintiff's counsel expended reasonable time in engaging in the necessary

discovery, briefing and arguing two motions for summary judgment, on appeal to the Ninth

Circuit and the U.S. Supreme Court, and post appeal in preparation for an 8-day trial. Counsel

did not spend time pursuing or dealing with extraneous or irrelevant issues.[9] Paralegals and law

clerks with lower hourly rates were used effectively and efficiently to the extent possible.[10] The

hours Plaintiff's counsel expended in discovery and preparing and trying the case are thus

---

[8] https://www.c-span.org/video/?c4788388/rep-susan-wild-paycheck-fairness-act

[9] Some of the time billed relates to representation of Ms. Fuller before the Idaho Human Rights
Commission as she was required to file a charge in order to adequately exhaust her administrative
remedies. Thus, Ms. Fuller includes these fees as part and parcel to her representation in this matter. *See
Webb v. Dyer County Bd. of Educ.*, 471 U.S. 234, 243 (1985) (allowing fee awards that include
compensation for worked performed before the complaint is filed); *McKenzie Flyfishers v. McIntosh*,
No. 6:13-CV-02125-TC, 2016 WL 446880, at *8 (D. Or. Jan. 22, 2016).

[10] As Strindberg & Scholnick is a small firm, it has only had one (and sometimes no) associates working
in the Idaho office, and one or two associates in the Utah office. Thus, the Firm does not have the depth of
employees found at bigger law firms to have an associate assigned to all litigation cases. Additionally,
because Ms. Birch and Ms. Harstad were lead co-counsel, it was more efficient for them to do most of the
heavy-lifting in the case so that they did not have to duplicate time absorbing work done by associates.

reasonable and an appropriate basis for making the lodestar calculation. *See Casperson Dec.* at ¶ 11, and *Belodoff Dec.* at ¶¶ 7, 10 submitted herewith.

> 2. *The hourly rates are reasonable.*

The factors that may be considered by the Court in determining a reasonable hourly rate for a successful civil rights lawyer include: "the novelty and difficulty of the issues, the skill required to try the case, whether or not the fee is contingent, and the experience held by counsel and fee awards in similar cases." *Moreno*, 534 F.3d at 1114. Here, the requested rates are less than or commensurate with rates that have been approved by Idaho state and federal courts for employment law/civil rights attorneys whose ability, reputation and experience are similar to that of Ms. Fuller's lawyers in the local market. *See Birch Dec.* at ¶¶ 14-15*; Casperson Dec.* at *¶¶ 5-7, 11; and Belodoff Dec.* at ¶¶ 4-5, 10 filed herewith.

As set forth in the Ms. Birch's *Declaration*, Ms. Fuller's primary attorneys were Erika Birch and Kass Harstad. They have been successfully litigating civil cases for over 18 years, and are well known and respected in their legal communities. (*See Birch Dec.* ¶¶ 5-8; *see also Casperson Dec.* at ¶ 6-7; *Belodoff Dec.* at ¶ 6.)  The *Declarations* of Ms. Casperson and Mr. Belodoff, both experienced litigators in federal court representing plaintiffs in employment and civil rights cases, further support that the hourly rates, and the number of hours expended in this case, are reasonable. Additionally, the fee agreement with Ms. Fuller reflects that the litigation hourly rate for both Ms. Birch and Ms. Harstad is $325 an hour. *See Birch Dec.* at ¶ 2.

As far as rates approved in similar cases, Plaintiff's counsel directs the Court to the cases referenced in Ms. Birch's *Declaration* at ¶ 15 and to the hourly rates awarded by this Court in a Pocatello federal employment case *Ricks v. Plastic Industries Inc.*, 15-cv-572-DCN (Dkt. # 54 January 3, 2018)(ordering reasonable attorney's fees in Title VII case based on the requested

hourly rates for Eastern Idaho which included $300/hour for Ms. Birch and Ms. Harstad), and to the case of *Eller v. Idaho State Police*, cv-2015-127 (Fourth District Idaho)(March 26, 2018 *Memorandum Decision and Order* regarding fees in whistleblower case also litigated by Ms. Fuller's counsel, noting that the success in that case "must be largely credited to his counsel's experience, commitment, and specialized knowledge of employment law," and finding $325 an hour for Ms. Birch and Mr. Hallam (who has 21 years of experience) "objectively reasonable for similarly skilled and experienced civil litigation attorneys in Boise, Idaho.")[11]

As set forth above, the Firm retained Professor Schnapper after IDOC filed its cert. petition. Effective representation before the Supreme Court typically requires a substantial body of experience in that Court, and is different from appearing in lower appellate courts. *See Declaration of Eric Schnapper*, filed herewith, ¶ 7. This is particularly true at the cert. petition stage. *Id.* The importance of expertise in Supreme Court litigation is reflected in the emergence of a relatively small number of attorneys known for their experience in this area and their familiarity to the Court. *Id.* at ¶ 8. As set forth in Professor Schnapper's Declaration, he has represented plaintiffs in *numerous* Supreme Court cases involving employment law and civil rights since the 1970's, and including significant sexual harassment issues under Title VII.[12] *Schnapper Dec.* at ¶ 6, and his attached CV. With respect to Professor Schnapper's requested hourly rate of $750/h, this rate is well below what other attorneys who have specialized

---

[11] The Court also found that Mr. Strindberg's rate of $425 and Ms. Scholnick's rate of $375 were reasonable. However, for reasons unique to that case, the Court used lower rates to discount the fees requested by plaintiff.

[12] For example, *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998); *Farragher v. City of Boca Raton*, 524 U.S. 775 (1998) (sexual harassment); *Oncale v. Sundowner Offshore Oil Co.*, 523 U.S. 75 (1998) (sexual harassment)

experience in Supreme Court work equivalent to his charge. *Id*. at ¶ 9. As recognized by a district court in the southern district of Texas, this rate is "a reasonable rate for practice before the United States Supreme Court." *Zamora v. City of Houston*, H-07-4510 (November 2016) Dkt. #442, p. 8-9, attached as Exhibit A; see also attached August 10, 2015 Article: *Top Supreme Court Advocates Charge How Much Per Hour? Appearing before the high court involves high billing rates – but that doesn't make those rates unreasonable*, Exhibit B. Here, no attorneys in the Firm have experience appearing before the Supreme Court. Additionally, given the few attorneys who practice in the area of employment law on the employee side in Idaho, and given the importance of obtaining competent counsel in opposing IDOC's cert. petition, the Firm's decision to associate with Professor Schnapper was reasonable. Rates outside the forum may be used "if local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case." *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992). Thus, Professor Schnapper's rate is reasonable and enabled the Firm to minimize the amount of time spent on Opposing the cert. petition.

As is reflected in Ms. Birch's Declaration and the attachments thereto, the lodestar amount requested here totals $999,564.50. *See Birch Dec*. at ¶ 13.

### C.  No Reduction is Necessary for Dismissed Claims

Plaintiff predicts that Defendant will argue that the fees should be reduced based on the Ninth Circuit's affirmation of the dismissal of some of Ms. Fuller's claims on summary judgment. This argument fails for several reasons. The claims dismissed include the rape claim, the disparate treatment claim regarding the administrative pay issue, Ms. Fuller's constructive discharge, and her claim of negligent infliction of emotional distress. All of these claims arise

from and share the same common core of facts as Ms. Fuller's successful hostile work environment claim.  As the U.S. Supreme Court cautioned in *Hensley*, before hours may be deducted specifically for unsuccessful claims, the claims must be distinct in both law and fact, *i.e.*, suitable for entirely separate lawsuits. 461 U.S. at 434-35.

Where a plaintiff prevails on some claims and not on others in an employment discrimination case, the Court must engage in a two-part analysis in awarding attorneys' fees. *Odima v. Westin Tucson Hotel,* 53 F3d 1484, 1499 (9th Cir. 1994). First, the Court should determine if the claims on which plaintiff failed to prevail were related to his successful claims. *Id*. Next, the Court evaluates the "significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.*, *quoting Thorne v. City of El Segundo,* 802 F.2d 1131, 1134 (9th Cir. 1986)).

Turning to the first prong, related claims "involve a common core of facts or will be based on related legal theories." *Id.*  "A court will award attorneys' fees for 'claims upon which the plaintiff failed to prevail [but] were related to the plaintiff's [successful] claims.'" *Marsu, B.V. v. Walt Disney Co.*, 185 F.3d 932 (9th Cir. 1999) (upholding district court's aware of all fees requested by plaintiff because his unsuccessful claims of fraudulent inducement and accounting were based on same set of facts as his successful breach of contract/covenant of good faith and fair dealing) *citing Odima*, 53 F.3d at 1499.

Here, there can be no question that the claims dismissed were related to the hostile work environment claim. As to the rape claim, this Court aptly recognized that, "it is difficult to divorce Cruz's actions from this case—after all, his actions are the foundation of everything that transpired afterwards." *Memorandum Decision and Order*, Dkt. #134, p. 9. Moreover, the evidence regarding IDOC's notice of other complaints against Cruz were an important part of

14

Ms. Fuller's proof of her claims. *Id.* at p. 16 *citing Fuller*, 865 F.3d at 1162. As to the constructive discharge claim, which was related to IDOC's refusal to disclose the Civil Protection Order,[13] this Court understood that this evidence was also relevant to her hostile environment claim. *Id.* at p. 10. With regard to the paid leave claim, the Ninth Circuit and this Court found that the denial of paid leave to Ms. Fuller was properly part of the totality of the circumstances of her hostile work environment claim. *See* Dkt. #134 p. 11-12; *Fuller*, 865 F.3d at 1163, n.9. And finally, Ms. Fuller's infliction of emotional distress tort claim was based on all the same facts that gave rise to her hostile work environment claim. As recognized by the Ninth Circuit, sometimes "losing is part of winning." *Cabrales v. County of Los Angeles*, 935 F.2d 1050, 1053 (9th Cir. 1991). "[T]he litigant who doesn't lose some skirmishes on the way to winning the war" is rare, and "a lawyer who takes on only those battles he is certain of winning is probably not serving his client vigorously." *Id.*  All of the evidence related to Ms. Fuller's dismissed claims was relevant to her hostile work environment claim that she ultimately prevailed on. Thus, the dismissed claims are related to Ms. Fuller's successful claim.

Under the second prong, the "significance of the overall relief obtained," full compensation may be appropriate where the plaintiff obtained "excellent results," whereas full compensation may be excessive if plaintiff only obtained "partial or limited success." *Odima,* 53 F.3d at 1499, *quoting Hensley*, 461 U.S. at 435-37.  Here, the jury awarded nearly two million dollars in emotional distress damages to Ms. Fuller. This was an exceptional result. *See Casperson Dec.* at ¶ 4; *Belodoff Dec.* at ¶ 9. Although IDOC has requested this Court reduce that

---

[13] The Ninth Circuit mistakenly found that the CPO was sealed in rendering its decision. *See Fuller v. Idaho Dep't or Corr.*, 694 F. App'x 590, 591 (9th Cir. 2017). However, as this Court now knows, the CPO itself was not sealed, and, the jury here did not buy IDOC's position that its officials mistakenly believed it was sealed.

award to $300,000 under the Title VII cap, the jury's award was significant and should not be discounted because of congressional caps.

Moreover, the day after Ms. Fuller's verdict, Sharla Means, the head of Human Resources for all of IDOC sent an email out to the entire agency. The email admitted that "a jury ruled against IDOC on an almost 8 year old claim . . ." and expressed IDOC's "commitment to providing a safe and respectful workplace to all of our staff." *See* attached Exhibit C. The email went on to reference policies and resources for IDOC employees. *Id.* It can thus easily be inferred that Ms. Fuller's verdict benefited not just her, but was a positive reinforcement of IDOC's obligations to all its employees. And, certainly this verdict sent a message to IDOC, and likely other agencies and employers, that there is real risk in not appropriately handling hostile work environments. The "court should consider not only the monetary results but also the significant nonmonetary results achieved" for Ms. Fuller and "other members of society." *Morales*, 96 F.3d at 365 (verdict constitutes a warning to law-enforcement offices not to treat civilians unconstitutionally.). Considering all of this, Ms. Fuller obtained "excellent results," indeed, and it cannot be considered only "partial or limited success" that some of Ms. Fuller's claims were dismissed on her way to prevailing on her hostile work environment claim.

In summary, Ms. Fuller achieved excellent results in prevailing on her hostile environment claim submitted to the jury at trial. That claim involved and was based upon the same common core of facts as the claims dismissed on summary judgment. Under the two-step analysis outlined in *Odima*, Ms. Fuller is entitled to a full fee.

### D.    Enhancement for Delay of Payment

In *Kerr v. Screen Extras Guild, Inc.*, 526 F2d 67, 70 (9th Cir. 1975), the Ninth Circuit adopted twelve factors to be considered by the Court in determining the reasonableness of

attorneys' fees awarded.[14]  While some of these factors have since been subsumed in the lodestar analysis, they are still relevant in determining adjustments to the lodestar amount. Of those factors, several are of import here and support an enhancement to Ms. Fuller's lodestar fees. Specifically, the Supreme Court has established that an adjustment for delay in payment of fees can be appropriate. *Missouri v. Jenkins*, 491 U.S. 274, 284 (1989).

Ms. Fuller and the Firm have steadfastly prosecuted her case for over seven years. *Birch Dec*. at ¶ 2. The same two lead counsel, Ms. Birch and Ms. Harstad, have been involved throughout the entire litigation – the charge of discrimination and complaint; discovery and summary judgment; on appeal to the Ninth Circuit and the U.S. Supreme Court; and, post-remand through the trial. The Firm has received no payment from Ms. Fuller as it has been representing her on a contingency fee arrangement, and it has advanced over $75,000 in costs. *Id.*

Additionally, at certain times in the litigation, this case required a substantial amount of resources.  In a small firm like Strindberg & Scholnick, there is a limit to the number of litigation cases the firm can take. Thus, while litigating Ms. Fuller's case for over seven years, Strindberg & Scholnick was limited in taking on other cases for litigation. Additionally, it is difficult and risky for firms to litigate compensatory damage cases on a contingency basis given that the plaintiff may not obtain a large verdict. *Birch Dec*. at ¶ 4, 18; *Belodoff Dec.* at ¶ 8. Despite this,

---

[14] These factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Kerr*, 526 F2d at 70.

Strindberg & Scholnick believes in the value of acting as "private attorneys general" and "secur[ing] important results that benefit society as a whole." *See Clark v. City of Los Angeles*, 803 F.2d 987, 991 (9th Cir. 1986) (allowing for a 1.5 enhancement in contingency civil rights case where lawyer was precluded from accepting other employment).

As set forth above, the attorneys' fees lodestar is $999,564.50. Plaintiff requests that the Court provide for an adjustment to the lodestar amount to account for the time delay in receiving payment, forgoing other work, and based on the riskiness, difficulty and importance in litigating cases like this one that involve civil rights of a state employee who is only seeking emotional distress damages. *See Kerr*, 526 F.2d at 70. Plaintiff suggests an enhancement of an additional 10-15% would be appropriate given the delay of payment.[15] *See In re Washington Public Power Supply System Securities Litigation*, 19 F.3d 1291, 1305 (9th Cir 1994)(remanding for calculation of enhancement using either attorney's current rates to all the hours billed, or the rates as reflected in the historic billing plus interest to account for a seven-year delay in payment).

### E.    Expert Fees

Expert fees are awardable as attorney's fees pursuant to §1988(c). *Id.* ("In awarding an attorney's fee under subsection (b) . . ., the court, in its discretion, may include expert fees as part of the attorney's fee.") Ms. Fuller incurred costs related to the disclosure of an economic expert, Mr. Couillard. However, she does not seek these expert fees as she was unable to seek economic losses. *Birch Dec.* at ¶ 30. Ms. Fuller does seek reimbursement of the expert fees related to her claim of emotional distress. As noted above, Dr. Fitzgerald was retained to opine on Ms. Fuller's

---

[15] *See* I.C. § 28-22-104 setting the legal rate of interest at 12%. The Court could of course also apply the current attorney rates to all of the time billed as the district court did in the *Washington Public Power Supply System* case. That amount can be calculated by Plaintiff who estimates that it would add approximately 10-15% to the loadstar fees.

emotional distress, and on IDOC's EEO policies and practices. Dr. Fitzgerald was called as a witness at trial. Because of the time elapse between her original report and the remand for trial, the parties agreed that it was appropriate and necessary for their respective experts to re-evaluate Ms. Fuller and provide supplemental reports. Given Ms. Fuller's conditions – post-traumatic stress disorder and major depressive disorder, it was critical to present expert witness testimony. Moreover, Ms. Fuller's emotional distress claim was complicated by the fact that Dr. Fitzgerald found that Ms. Fuller suffered PTSD because of the rapes by Cruz as opposed to the actions/inactions by IDOC. Thus, her analysis had to include that foundational/background assessment and then also assess if/how Ms. Fuller's PTSD was exacerbated by the hostile work environment at IDOC. *See Birch Dec.* at ¶¶ 25-26. As set forth in more detail in Ms. Birch's declaration, Plaintiff seeks reimbursement of $45,330.27 in non-taxable costs incurred related to Dr. Fitzgerald's expert fees/costs. Dr. Fitzgerald's rates were comparable to defense expert Dr. Beaver. *See id.* at ¶ 27.

Additionally, Defendant retained Dr. Beaver as their emotional distress expert. Plaintiff deposed Dr. Beaver and incurred $ 2,7000 in expert fees and deposition costs related to the same which should be reimbursed to Ms. Fuller. *Birch Dec*. at ¶ 29. **Thus, total expert fees sought to be reimbursed to Ms. Fuller are $48,030.27.**

### F.     Additional Costs

Plaintiff is also requesting reimbursement for additional expenses not covered in her Bill of Costs. Specifically, these are non-overhead expenses that Plaintiff's counsel has billed to Ms. Fuller and are specifically recoverable under § 1988m as "out-of-pocket expenses that 'would normally be charged to a fee paying client.'" *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994), *citing Chalmers v. City of Los Angeles,* 796 F.2d 1205, 1216 n. 7 (9th Cir.1986), *reh'g*

19

*denied and opinion amended,* 808 F.2d 1373 (9th Cir.1987)); *Laffey v. Northwest Airlines, Inc.,* 746 F.2d 4, 30 (D.C.Cir.1984), *cert. denied,* 472 U.S. 1021, 105 S.Ct. 3488, 87 L.Ed.2d 622 (1985), *overruled on other grounds; Save Our Cumberland Mountains, Inc. v. Hodel,* 857 F.2d 1516 (D.C.Cir.1988) (en banc). As set forth in the Ms. Birch's Declaration at paragraphs 32-40, these additional costs include the following:

| Cost Category | Amount | Birch Declaration Exhibits for Reference |
|---|---|---|
| Process Service Fees/Skip Trace | $1,639.06 | 1, 2, 5, & 7 |
| Copies/Transcripts | $725.94 | 1, 2 & 7 |
| Printing SCOTUS Opposition Brief | $1,527.00 | 4 & 7 |
| Ninth Circuit Taxed Costs | $278.30 | Dkt. # 96 |
| Ninth Circuit Un-Taxed Costs | $212.56 | 3 & 7 |
| Legal Research Costs | $1,238.03 | 4, 5 & 7 |
| Mediation | $1,925.00 | 5 & 7 |
| Travel | $1,192.88 | 3, 5 & 7 |
| Postage/Exhibit | $140.94 | 1, 2, 5, & 7 |
| Focus Groups | $1,871.63 | 1, 5 & 7 |
|  |  |  |
| **GRAND TOTAL** | **$10,751.34** |  |

## IV.   CONCLUSION

For all the reasons stated above, Ms. Fuller respectfully requests that the Court enter an award of her requested attorney's fees and costs including those fees incurred in petitioning the Court for fees/costs.

Dated this day of April 9, 2019.

**STRINDBERG & SCHOLNICK, LLC**

 /s/ Erika Birch
Erika Birch
Kass Harstad
Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on April 9, 2019 a true and correct copy of the foregoing pleading was served on the following via the CM/ECF system:

Phillip J. Collaer
Yvonne A. Dunbar
Anderson Julian & Hull LLP
C.W. Moore Plaza
250 S. Fifth St. Suite 700
P.O. Box 7426
Boise, ID  83707-7426
*pcollaer@ajhlaw.com*
*ydunbar@ajhlaw.com*

/s/ Tonya Hansen