ERIKA BIRCH (Bar No. 7831)
KASS HARSTAD (Bar No. 8419)
**STRINDBERG & SCHOLNICK, LLC**
1516 W. Hays St.
Boise, ID 83702
Telephone:  (208) 336-1788
Facsimile:  (208) 287-3708
kass@utahjobjustice.com
erika@idahojobjustice.com

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **CYNTHIA FULLER,**<br><br>　　　　Plaintiff,<br><br>vs.<br><br>**STATE OF IDAHO, DEPARTMENT OF CORRECTIONS, et al.**<br><br>　　　　Defendants. | **DECLARATION OF ERIKA BIRCH IN SUPPORT OF ATTORNEYS FEES AND COSTS**<br><br>Case No. 1:13-CV-00035-DCN<br><br>Honorable Judge David C. Nye |

I, Erika Birch, declare under penalty and perjury, as follows:

1.　　I am a partner in Strindberg & Scholnick, LLC's Boise office of Strindberg & Scholnick, LLC ("Strindberg & Scholnick" or "the Firm") and one of the lead attorneys representing Ms. Fuller in this case. I make this affidavit from personal knowledge.

2.　　In this action, the Firm agreed to represent Ms. Fuller on a contingent fee basis because she could not afford our representation on any hourly or modified hourly billing basis. Ms. Fuller initially retained the Firm in February of 2012 to represent her through the Idaho

**1 | Page**　　**DECLARATION OF ERIKA BIRCH IN SUPPORT OF ATTORNEYS FEES AND COSTS**

Human Rights Commission process related to her charge of discrimination. The Firm has continued to represent Ms. Fuller through all aspects of this litigation including her appeal to the Ninth Circuit Court of Appeals, opposing IDOC's petition for writ of certiorari to the United States Supreme Court, and through the trial in February of 2019 on a contingency arrangement.[1] Ms. Fuller has been billed for and is responsible for the costs and expenses incurred in this matter. However, the Firm has had to advance those costs and expenses (which have exceeded $75,000) as Ms. Fuller has been unable to pay them as contemplated by the fee agreement. Additionally, the fee agreement reflects that the current litigation hourly rate for both Ms. Birch and Ms. Harstad is $325 an hour.

      3.      Attached as Exhibit 1-7 are true and accurate copies of the Firm's billable hours and expenses in this matter.[2] The hours listed in Exhibits 1-5 are based upon contemporaneous records which I, and other lawyers, clerks, paralegals, etc., personally kept in our billing programs as the work was completed. I have reviewed these records to confirm the accuracy of the entries, as well as the necessity for and reasonableness of the time and expenses committed to the litigation. As co-lead counsel in this case, I have exercised billing judgment and have excluded and/or written off hours as unbillable in this case. The remaining hours listed were reasonable and necessary to the effective and efficient prosecution of this case.

---

[1] The Firm's contingent fee is 45% (up from the Firm's regular 40% contingency because of the appeals) of the total judgment (*i.e.*, any damages award and including any attorney fee award.) The fee agreement provides that the Firm can either take the contingent amount or the actual attorney fees awarded by a Court, whichever is greater.

[2] By producing a copy of our billing history, the Firm does not intend to waive any attorney client or work product privileges and have attempted to redact certain information that is covered by those privileges.

**2 |** Page      **DECLARATION OF ERIKA BIRCH IN SUPPORT OF ATTORNEYS FEES AND COSTS**

4. Strindberg & Scholnick, LLC is a small, regional firm with offices in both Utah and Idaho. In the past several years, the Firm has employed approximately seven (7) to nine (9) attorneys in Utah and Idaho, all of whom focus on employment and civil rights matters. Employment law is a specialized area in which not many lawyers in Idaho practice regularly, particularly on the plaintiff's side. Representing plaintiffs in these cases is time consuming and risky.

5. I graduated from the University of Colorado School of Law in May 2000 and was licensed to practice law in Colorado in October 2000. I have been practicing in the area of employment and civil rights law, mainly on behalf of plaintiffs, since that time (a total of over 18 years).

6. I began working for Strindberg & Scholnick, LLC in August 2003. I have been a partner in the Firm since January 2006. I was admitted to practice law in Idaho in November 2007. After moving to Idaho, I opened the Firm's Boise office in mid-2008. For several years I was the only attorney in the firm who lived in Idaho. I am also licensed in Colorado and Utah and have been admitted to and appeared in state and federal courts in all three states. I am admitted and have appeared before the Tenth and Ninth Circuit Court of Appeals.

7. My law partner Kathryn (Kass) Harstad served as primary co-lead counsel in this case. Ms. Harstad graduated from the University of Minnesota Law School in 2000, and was admitted to practice law in Illinois that same year. In 2006, Ms. Harstad was admitted to the Utah State Bar, and in 2010, she was admitted to the Idaho State Bar. She began working for the Firm in 2006 and became a partner in 2010. Thus, she has also been practicing law for 18+ years and specializing in employment cases for 12 of those years.

DECLARATION OF ERIKA BIRCH IN SUPPORT OF
            ATTORNEYS FEES AND COSTS

8. Both Ms. Harstad and I have successfully prosecuted numerous employment and civil rights cases, including multi-plaintiff and class action cases in Utah and Idaho. *See e.g., Ricks v. Plastic Industries* (15-cv-572-DCN D. Idaho)(Judgment Dkt #54); *Eller vs. ISP* (cv-oc-15-127 Ada County)(Amended Judgment March 26, 2018); *Garcia v. PSI* (10-cv-00055-ELJ D. Idaho) (Judgment Dkt. #146). The majority of our practice is in federal court. We have both been involved in leadership roles with state bar sections and other organizations in the area of employment, civil rights and civil litigation. Likewise, both Ms. Harstad and I have, and continue to, present and publish in the area of employment and civil rights litigation.

9. The majority of the work in this matter was performed by myself and Ms. Harstad with assistance from our paralegals, mainly Tonya Hansen. At the time Ms. Fuller retained the Firm, there was only one associate attorney at the firm in Idaho who had just graduated law school and was not yet licensed. Thus, Ms. Harstad and/or Ms. Birch handled Ms. Fuller's case together. However, while Ms. Birch was gone on sabbatical in 2014, our Idaho associate, Ms. Juarez, stepped in as co-counsel between January and July of 2014. We utilized paralegals and clerks to the extent possible as a way to keep attorney billable time as low as possible. As mentioned, this included Tonya Hansen, who has over 24 years of litigation experience as a paralegal and has worked at our Firm since March of 2010, and more recently and to a lesser extent, Dunja Subasic who has over 5.5 years of experience as a legal assistant/paralegal at the Firm.

10. A relatively small portion of the necessary work was performed by other attorneys and clerks/paralegals at the Firm as reflected below. This work largely included reviewing/revising documents; discussions re: case strategy; participating in mock oral

arguments on appeal; and assistance during trial preparations and during trial where it required all-hands-on-deck in order to prepare given the workload.

11. Because defendants (in this case IDOC) have most of the relevant information, plaintiffs must conduct significant discovery in discrimination cases as they typically only have access to the documents and witnesses through the discovery process. Plaintiff deposed ten non-expert witnesses, all of whom worked for IDOC at the time and/or were purportedly being represented by defense counsel. Additionally, all ten of the witnesses deposed appeared as witnesses at trial, supporting that those depositions were necessary to the claim tried. Defendant deposed three witnesses, and two of those witnesses were called as trial witnesses. Nearly 10,000 pages of documents were exchanged in non-expert discovery, along with various videos and recordings from the OPS and CCSO investigations. This case also overlapped with CCSO's criminal investigation of Herbt Cruz, such that discovery also involved the criminal case records and evidence.

12. After filing the *Complaint*, Plaintiff faced an early motion for summary judgment. The former judge in this case required the parties to file trial witness lists during the discovery period. Additionally, at the close of discovery, both parties filed summary judgment motions. The briefing by both parties were factually and legally dense. After oral argument on summary judgment, there was additional briefing.

13. The attorneys and paralegals that have billed requested time in this case are reflected in the chart below along with their experience, hourly rates and number of hours expended in the case:

| Attorney | Reasonable Hourly Rate[3] | Years of Practice | Number of Hours | Total Fees |
|---|---|---|---|---|
| Erika Birch, Member | $210-325 | 18 | 955.70 | $285,345.50 |
| Kass Harstad, Member | $200-325 | 18 | 1,641.20 | $456,935.00 |
| Tonya Hansen, Paralegal | $95-140 | 24 | 703.15 | $79,683.75 |
| Lucy Juarez, Former Associate (ID) | $150 | 7 | 108 | $16,200 |
| Dunja Subasic, Paralegal | $120 | 5.5 | 119.70 | $14,364.00 |
| Eric Schnapper, Associated SCOTUS Counsel | $750 | 46 | 97.6 | $73,200 |
| Erik Strindberg, Member | $300-425 | 35 | 43.1 | $16,948.75 |
| Lauren Scholnick, Member | $275-375 | 23 | 71.25 | $23,513.75 |
| Jonathan Thorne, Member (formerly associate) | $150-$275 | 9 | 23.55 | $6,276.25 |
| Guy Hallam, Member | $325 | 19 | 36.4 | $11,830.00 |
| Lourdes Matsumoto, Associate (ID) | $175 | 3 | 19.3 | $3,377.50 |
| Cameron Platt, Associate (UT) | $175 | 1.5 | 11.8 | $2,065.00 |
| Matt Harrison, Former Associate (UT) | $175 | 8 | 3.5 | $615.50 |
| Camille Marx, Paralegal (UT) | $115-140 | 28 | 17.55 | $2,131.00 |
| Law Clerks (CG, PF, DG) | $75-120 | N/A | 72.12 | $7,081.50 |
| **TOTAL** | | | **3,923.92** | **$999,564.50** |

---

[3] These rates were the historical hourly rates charged during the relevant time leading up to the appeal to the Ninth Circuit. Once the appeal became necessary and through the remainder of our representation of Ms. Fuller we seek the higher rates ($325/h for Ms. Birch and Ms. Harstad) which is based on current litigation rates and the rate reflected in Ms. Fuller's litigation fee agreement.

14. Based on my knowledge and research regarding hourly rates charged and/or approved in federal court employment/civil rights matters in Boise, Idaho, the above rates are reasonable and in line with prevailing market rates. *See also, Declarations of DeAnne Casperson* (*Casperson Dec.*) at ¶¶ 5, 11, and *Howard Belodoff* (*Belodoff Dec.*) at ¶¶ 4, 10, filed herewith.

15. Specifically, my research of market rates and reasonable fees included interviewing other attorneys who litigate employment and civil rights cases in Boise, Idaho about their hourly litigation rates and/or review of requests or awards for fees in such cases. I surveyed fee awards in Idaho state and federal courts in similar cases, including the following cases: *United States of America ex rel. Dr. Jeffrey Jacobs v. CDS, P.A.*, 14-CV-301-BLW (D. Idaho November 30, 2018 Dkt. # 74); *Wright v. Ada County*, CV-OC-2013-2730 (Ada County May 25, 2017) (noting that the hourly rates requested were "very reasonable"); *Norton v. Maximus,* 14-CV-30-WBS (D. Idaho May 19, 2016 Dkt. # 188); *Williams v. Madison County*, 12-CV-561-JCC (D. Idaho Dec. 3, 2015 Dkt. # 118); *Latta v. Otter*, 13:CV:482-CWD, 2014 WL 7245631 at *3-6 (D. Idaho Dec. 19, 2014); *Community House, Inc. v. City of Boise*, 05-CV-283-CWD, 2014 WL 1247748 at *6 (D. Idaho Mar. 25, 2014). In these cases, reasonable attorneys' fees were within the following ranges:

   a. 21- 34 years of experience at $400;
   b. 20-30 years of experience at $350-375;
   c. 14-20 years of experience at $300-325;
   d. 5-15 years of experience at $225-275;
   e. and 0-5 years of experience at $150-200.

16. Throughout the litigation, Ms. Fuller made several overtures toward possible settlement in this case including prior to filing the lawsuit. Those overtures were consistently rebuffed by Defendant. After Ms. Fuller's successful appeal to the Ninth Circuit, during a mediation in January of 2018 with private mediator Newal Squyres, the most Defendant offered Ms. Fuller was $80,000. This was despite the fact that her attorney's fees and costs at that point were already in the mid-six figures. Ms. Fuller was billed and paid a mediation fee of $1,925 which she now seeks reimbursement for. *See* Exhibit 7.

17. No other offers were made by Defendant prior to the verdict. Post-verdict, Ms. Fuller once again initiated settlement discussions by making an offer to Defendant that would avoid the parties having to litigate post-trial motions and attorney fees and costs. The parties exchanged several offers but were unable to reach a resolution.

18. Because of the amount of time that the Firm was required to devote to this case, which during certain periods of time was a substantial part of Ms. Birch's and Ms. Harstad's workload, the Firm was limited in taking on other cases for litigation.

**FEES AND COSTS ON APPEAL**

19. After Judge Quackenbush dismissed Ms. Fuller's case in its entirety on summary judgment, she appealed to the Ninth Circuit. Once again, Ms. Birch and Ms. Harstad were lead co-counsel on the appeal and both worked on the written briefs and legal research. Ms. Harstad argued the case at oral argument. The briefing required intense legal research and writing and involved complex legal issues and many facts.

20. After the Ninth Circuit decision, Ms. Fuller filed a *Motion for Clarification* asking the Ninth Circuit to make clear that her hostile work environment claim under *both* Title VII and

§ 1983 were remanded for trial. *See* Appeal Dkt. #44. The Court denied Ms. Fuller's motion "without prejudice to filing a petition for panel rehearing or rehearing en banc." *See* Appeal Dkt. #46. IDOC then filed a *Petition for Rehearing or Rehearing En Banc*, and Ms. Fuller opposed the Petition. The Court denied both a panel rehearing and an en banc rehearing. *See* Appeal Dkt. #54. The Ninth Circuit issued its Mandate on October 13, 2017 and **taxed IDOC with costs of $278.30**. *See* Appeal Dkt. #55. IDOC never paid nor tendered the costs to Ms. Fuller. The additional appeal costs are discussed below.

21. The total fees requested for the appeal to the Ninth Circuit are reflected in Exhibit 3. Attorneys' fees total: **$197,810.50** representing **640.40 hours** of time billed by the Firm.

22. After remand by the Ninth Circuit, the case was eventually reassigned to Judge David C. Nye. During a status conference on December 20, 2017, the Court set the case for a 7-day jury trial for May 29, 2018 as that was the earliest trial date that defense counsel could be available. IDOC did not mention during the status conference or otherwise that it was planning or considering filing an appeal to the United States Supreme Court. Thus, the Court entered a Trial Order on January 3, 2018. (Dkt. #102). That same day, IDOC filed a *petition for writ of certiorari* which was placed on the Supreme Court docket on January 8, 2018. Thus, the May trial was stayed. (Dkt. #105).

23. Neither Ms. Birch nor Ms. Harstad had been admitted to the United States Supreme Court. None of the attorneys in the firm have any experience in the U.S. Supreme Court. Thus, in order to obtain competent and efficient counsel, the Firm associated with Professor Eric Schnapper. Professor Schnapper is a well-known Supreme Court lawyer and academic in the employment law field as further set forth in his Declaration, filed herewith.

DECLARATION OF ERIKA BIRCH IN SUPPORT OF
ATTORNEYS FEES AND COSTS

Professor Schnapper's fees for Opposing the cert. petition total **$73,200** representing **97.6 hours** at $750/h. *See Schnapper Dec.* ¶¶ 9-10.

24. The Supreme Court denied IDOC's petition on March 26, 2018, and the case proceeded to trial in front of Judge Nye. *See* Dkt. #106. Because the Firm associated with Professor Schnapper, the work at the Supreme Court level was minimized. The total amount of requested fees for the Supreme Court work performed by the Firm are reflected in Exhibit 4 and total **$11,644.25** in fees representing **37.65 hours**.

## EXPERT FEES AND COSTS

25. The Firm retained Louise F. Fitzgerald, Ph.D. as Ms. Fuller's expert regarding her emotional distress and on IDOC's EEO policies and practices. Dr. Fitzgerald conducted psychological testing and a psychological examination of Ms. Fuller as part of her original report in 2014 and updated the same for her supplemental report in 2018. Because of the time elapse between her original report and the remand for trial, the parties agreed that it was appropriate and necessary for their respective experts to re-evaluate Ms. Fuller and provide supplemental reports. Given Ms. Fuller's diagnosed conditions – post-traumatic stress disorder and major depressive disorder, it was critical to present expert witness testimony. Moreover, Ms. Fuller's emotional distress claim was complicated by the fact that Dr. Fitzgerald found that Ms. Fuller suffered PTSD because of the rapes by Cruz as opposed to the actions/inactions by IDOC. Thus, her analysis had to include that foundational/background assessment and then also assess if/how Ms. Fuller's PTSD was exacerbated by the hostile work environment at IDOC.

26. Ms. Fuller travelled out of state in 2018 for this testing/examination, and in an exercise of discretion, she does not seek reimbursement for those travel related expenses. Dr. Fitzgerald travelled from out-of-state to conduct the testing/examination of Ms. Fuller in 2014 and in 2018, and then again in 2019 to attend trial. Dr. Fitzgerald did not bill any time for travel, just expenses. She presented testimony during trial and then remained on-call as a possible rebuttal witness after Defendant's expert, Dr. Beaver, testified.

27. Dr. Fitzgerald's fee schedules are attached as part of Exhibit 6 attached hereto. Some of her rates increased slightly during the course of this litigation (*i.e*, from the work performed in 2014 for the original examination/testing and report versus the updated examination/testing and report in 2018).[4] Her rates are comparable to the rates charged by Defendant's expert, Dr. Craig Beaver, whose rates are also found in Exhibit 6.

---

[4] Dr. Fitzgerald also used an associate, Linda L. Collingsworth, Ph.D., to conduct work at a lower hourly rate as reflected in the invoices.

**11 | Page    DECLARATION OF ERIKA BIRCH IN SUPPORT OF
                ATTORNEYS FEES AND COSTS**

28. Dr. Fitzgerald's invoices (Exhibit 6) reflect that she has billed Ms. Fuller the following:

| Type | Amount |
| --- | --- |
| Travel Expenses 2014 | $1,576 |
| Evaluation/Testing 2014 | $5,250 |
| Review/Report/Consultation 2014 | $21,000 |
| Supplemental Testing/Report 2018 | $5,000 (capped fee)[5] |
| Travel for Testing/Evaluation 2018 | $1,211.00 |
| Travel Expenses Trial 2019 | $2,149.32 ($1,676.25)[6] = $473.07 |
| Trial Prep and Attendance 2019 | $10,840.20 ($120)[7] = $10,720.20 |
| **Total:** | **$45,330.27** ($41,970.20 fees + $3,260.07 expenses) |

29. Plaintiff took Dr. Beaver's deposition and was billed for and paid for his time during the deposition. That amount totals: $2,700.00. *See* attached invoice, Exhibit 6.

30. The Firm retained Gary Couillard, CPA, as Ms. Fuller's economic expert in this case. Mr. Couillard billed a total of $4,241 for the analysis and expert report performed in Ms.

---

[5] Dr. Fitzgerald agreed to cap the amount billed to Ms. Fuller for the supplemental report, evaluation and testing at $5,000 plus expenses. However, the value of that work exceeded the capped amount by more than twice that amount.

[6] This amount was requested in the Plaintiff's Bill of Costs and hence is being deducted.

[7] This amount was requested as witness fee in the Plaintiff's Bill of Costs and hence is being deducted.

Fuller's case and that amount has been billed to her. However, in an exercise of discretion Plaintiff does not seek any of those expert fees.

31. **Thus, total expert fees sought are $48,030.27.** *See* Exhibit 6.

## OTHER COSTS[8]

32. Ms. Fuller seeks reimbursement of process service fees for trial subpoenas, service of the *Complaint*, and service of several discovery related subpoenas, which are not taxable costs pursuant to §1920, but were necessary to the successful prosecution of this case. Those costs total $1,257.11. *See* Exhibit 7. Additionally, in order to find potential witnesses during discovery and then again for trial, Ms. Fuller had to pay for skip traces ($381.95). All these costs were necessary and billed to Ms. Fuller, and together total $1,639.06. *Id.*

33. As part of discovery in this case, the Firm paid for copies of Ms. Fuller's medical records ($188.80), and records from the Idaho Human Rights Commission ($18.25), Canyon County Sheriff's Office ($179.64) and Nampa Police Department ($6.25) and a transcript of Ms. Fuller's Unemployment Benefits hearing wherein she, Mr. Kim Harvey, Mr. Henry Atencio and Ms. Roberta Hartz testified under oath, and the transcript of the meeting on November 10, 2011 between those same individuals that was used as a Trial Exhibit ($333). Those documents were necessary for discovery and these copying costs as billed to Ms. Fuller total $725.94. *See* Exhibit 7.

34. Ms. Fuller was billed for the printing of her *Opposition Brief* filed with the U.S. Supreme Court. Those costs, which are not taxable under the Supreme Court rules, totaled

---

[8] Plaintiff does not attach all the invoices billed to the Firm for these costs but can provide the same should the Court request them.

**13 | Page    DECLARATION OF ERIKA BIRCH IN SUPPORT OF
            ATTORNEYS FEES AND COSTS**

$1,527.00. *Id.* Additionally, the Ninth Circuit taxed IDOC with costs of $278.30, which was never tendered or paid by Defendant. Thus, we ask that this Court include this amount in the costs order and in any judgment. The additional costs not taxed incurred for the appeal include postage and the non-taxed copies which total $212.56. *Id.*

35. Ms. Fuller was billed for some, however not all, legal research costs incurred in her case (Westlaw charges of $1,238.03). *Id.*

36. As mentioned above, Plaintiff paid for a private mediator in an attempt to try and resolve the case. Plaintiff's participation in that mediation was in good faith. Defendant only offered less than six-figures during the mediation. Ms. Fuller was billed and paid a mediation fee of $1,925. *Id.*

37. Ms. Harstad traveled to Boise on a regular basis related to her representation of Ms. Fuller. However, we are not seeking any costs or expenses related to her travel with the following exceptions: the travel to Seattle required for the oral argument to the Ninth Circuit which was billed to Ms. Fuller ($1,082.60); and a car rental for Ms. Harstad during her extended stay in Boise for trial preparations ($110.28). *See* attached Exhibit 7. This travel was necessary and totals $1,192.88.

38. Our Firm did <u>not</u> bill Ms. Fuller for many of the other costs, such as long-distance telephone calls, printing, facsimiles, postage for standard mailing, or meals for depositions, hearings or trial. We are not requesting reimbursement for any of these non-billed costs. However, there were a few significant postage charges that were billed to Ms. Fuller. This includes sending courtesy copies of pleadings as required by Judge Quackenbush whose regular chambers was in Washington ($18.32), and certified mail charges for Ms. Fuller's Notice of

Claim filed with the Secretary of State ($5.75). The Firm billed Ms. Fuller for the demonstrative exhibit of the organizational chart that was used during the closing statement ($116.87). These copy costs were necessarily incurred and total $140.94. *See* Exhibit 7.

39.   The Firm conducted three rounds of focus groups – one to inform counsel regarding discovery necessary for the case; one to help prepare for trial including motions in limine, jury instructions and verdict forms; and one to help prepare for opening/closing statements. The Firm runs these focus groups in-house. They are an invaluable tool to effectively and efficiently prepare the case for discovery and for trial. The out-of-pocket expenses incurred for the three focus groups billed to Ms. Fuller total $1,871.63 and were a necessary part of competently representing Ms. Fuller and made the representation more efficient. *Id.*

40.   **Thus, the total amount in additional, necessary litigation costs billed to Ms. Fuller that we are requesting on her behalf is $10,751.34.** Moreover, to the extent that any of her requested costs submitted in her *Bill of Costs* filed on April 8, 2019 (Dkt. # 161) are found to not be appropriately taxable, Ms. Fuller reserves her right to request those costs as a supplement to this request.

FUTHER AFFIANT SAYETH NOT

DATED this 9th day of April, 2019

**STRINDBERG & SCHOLNICK, LLC**

 /s/ Erika Birch
Erika Birch
Kass Harstad
Attorneys for Plaintiff

15 | Page    DECLARATION OF ERIKA BIRCH IN SUPPORT OF
              ATTORNEYS FEES AND COSTS

## CERTIFICATE OF SERVICE

I hereby certify that on April 9, 2019 a true and correct copy of the foregoing pleading was served on the following via the CM/ECF system:

Phillip J. Collaer
Yvonne A. Dunbar
Anderson Julian & Hull LLP
C.W. Moore Plaza
250 S. Fifth St. Suite 700
P.O. Box 7426
Boise, ID  83707-7426
*pcollaer@ajhlaw.com*
*ydunbar@ajhlaw.com*


/s/ Tonya Hansen

## TABLE OF CONTENTS OF ATTACHED EXHIBITS

| Exhibit 1 | Is from an older billing system and contains requested time entries from the beginning of Ms. Fuller's matter through December 31, 2013 when we switched to a new billing system. |
|---|---|
| **Exhibit 2** | Contains requested time and expense[9] entries from January 1, 2014 until the appeal to the Ninth Circuit |
| **Exhibit 3** | Contains the time and expense entries for the appeal to the Ninth Circuit |
| **Exhibit 4** | Contains that time and expense entries for the petition for writ of certiorari to the U.S. Supreme Court |
| **Exhibit 5** | Contains the time and expense entries after the remand from the Ninth Circuit and through April 4, 2019 |
| **Exhibit 6** | Requested Expert Fees/Expenses and Expert Invoices |
| **Exhibit 7** | Requested un-taxed costs |

---

[9] Expenses are highlighted in green.

**17 | Page      DECLARATION OF ERIKA BIRCH IN SUPPORT OF
                 ATTORNEYS FEES AND COSTS**