UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CYNTHIA FULLER,<br><br>             Plaintiff,<br><br>    v.<br><br>STATE OF IDAHO, DEPARTMENT OF CORRECTIONS, et al.,<br><br>             Defendants. | Case No. 1:13-cv-00035-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Plaintiff Cynthia Fuller's Motion for Attorneys' Fees and Nontaxable Costs. Dkt. 162. Fuller also submitted a Bill of Costs requesting certain costs be taxed against Defendant Idaho Department of Corrections ("IDOC"). Dkt. 161.

Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will address the motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). For the reasons outlined below, the Court finds good cause to GRANT in PART and DENY in PART Fuller's Motion for Attorneys' Fees and Nontaxable Costs and Bill of Costs. The Court awards attorneys' fees in the amount of $990,043.20, non-taxable costs in the amount of $7,626.26, and taxable costs in the amount of $13,688.01.

## II. BACKGROUND

Fuller brought federal claims under Title VII of the Civil Rights Act of 1964, as amended and codified at 42 U.S.C. § 2000e, 42 U.S.C. § 1983, and various state law claims. Dkt. 1. Initial motion practice resulted in Fuller voluntarily dismissing some of her state law claims and IDOC prevailing—in part—on an early motion for summary judgment. Dkt. 19. On December 2, 2014, the Court granted summary judgement in favor of IDOC on all remaining claims.[1] Dkt. 82. Fuller subsequently appealed to the Ninth Circuit Court of Appeals. On July 31, 2017, the Ninth Circuit vacated summary judgment solely as to Fuller's hostile work environment claim and remanded the same for trial. Dkt. 91. This Court held a jury trial in February 2019. The jury returned a verdict for Fuller and awarded associated damages. Dkt. 158.

Fuller has now filed a Motion for Attorneys' Fees and Nontaxable Costs pursuant to 42 U.S.C. § 1988 (b) & (c), and 42 U.S.C. § 2000e-5(k). Dkt. 162. Fuller argues that as the prevailing party, she is entitled to attorneys' fees. In her motion, Fuller asks for a total of $1,075,283.77 in attorneys' fees.[2] Dkt. 163, at 7; Dkt. 178-1, at 8. Plaintiff also asks for an additional $24,545.18 in costs. Dkt. 161; Dkt. 163, at 19-20. Additionally, Plaintiff requests an enhancement to her award of attorneys' fees given the delay of payment.[3] Dkt. 163 at 18. IDOC argues that—for various reasons—the amount of fees and costs should be

---

[1] Judge Quackenbush presided over the case at that time.

[2] This total amount is comprised of all attorneys' fees requested, including those requested for preparation of the instant motion, as well as expert fees.

[3] Fuller requests an enhancement of an additional 10-15%, or in the alternative, that all time billed be retroactively calculated at counsel's current hourly rates. Dkt. 163, at 18.

reduced. Dkt. 172-1.

### III. ANALYSIS

In general, each party to a lawsuit bears its own attorney fees unless Congress has provided otherwise through statute. *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). Under Title VII of the Civil Rights Act, the court "may allow the prevailing party" to recover "a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). IDOC does not dispute that Fuller is the prevailing party in this case. Dkt. 172-1.

#### A. Lodestar calculation

Courts within the Ninth Circuit apply the "lodestar" approach to determine the fee award amount. *Vogel v. Harbor Plaza Center, LLC*, 893 F.3d 1152, 1158 (2018). The lodestar amount is "calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Id.* at 1160 (internal citations omitted). The "presumptively reasonable lodestar figure" may be adjusted based on twelve factors:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).

A reasonable rate is the rate that will "compensate counsel at the prevailing rate in the community for similar work; no more, no less." *Vogel,* 983 F.3d at 1158. Further, "a reasonable fee is a fee that is sufficient to induce a capable attorney to undertake the

representation of a meritorious civil rights case." *Id.* IDOC disputes the reasonableness of the rates requested by Fuller's attorneys. Dkt. 172-1, at 3.

### 1. Hourly Rates

IDOC does not contest that the rates requested by Fuller are the prevailing market rates. Instead, IDOC contends that Fuller's attorneys' rates (specifically Erika Birch and Kass Harstad—the two principle attorneys on this case) are too high based on a fee award granted to Fuller's counsel in a different state law matter. Dkt. 172-1, at 4-5. IDOC relies on the fees awarded in *Eller v Idaho State Police*, No. CVOC201500127, 2017 WL 4654215 (Idaho Dist. Sep. 01, 2017) to argue that Fuller's attorneys' requested rate in this case is too high. Dkt. 172, at 4-5. The Court disagrees. The decision by the state court in a completely unrelated matter—applying a different standard to a different client who had his own fee arrangement with Fuller's counsel—has no bearing on the Court's decision in this case. The Court finds that the rates requested by Fuller's counsel are reasonable and declines to reduce the rate used in the lodestar calculation simply because Fuller's counsel was awarded different rates in an unrelated state case.

IDOC also argues that Fuller's failure to produce a copy of her fee agreement somehow suggests that her requested fees are unreasonable. Dkt. 172-1, at 4. However, the "[d]etermination of a reasonable hourly rate is not made by reference to rates actually charged the prevailing party." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210-11 (9th Cir. 1986). Fuller's counsel has supported their requested rates with declarations that establish the prevailing market rates in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. Dkt. 163-4; Dkt. 163-5; Dkt. 164.

MEMORANDUM DECISION AND ORDER - 4

The Court has reviewed Fuller's counsels' experience, the supporting affidavits, and prior fee awards in the District of Idaho for similarly situated attorneys. Fuller's counsels' requested rates are in line with the prevailing market rates.

Further, as the Court noted above, IDOC does not actually contest that Fuller's counsels' request rates are *not* the prevailing market rates. Instead, IDOC asserts that because Fuller's counsel was awarded a lower fee in another case, those amounts should carryover here. The Court will not reduce the rate used in the lodestar calculation based on this argument. Plaintiff has established that her requested rates for Birch and Harstad (and, by extension, the other attorneys in this case) are reasonable hourly rates for Boise market.

IDOC also argues for a reduction in the rate awarded to any allowable fees for Professor Eric Schnapper—Fuller's attorney of record for her United States Supreme Court proceedings. Dkt. 172-1, at 5. IDOC argues that Professor Schnapper's rate should be reduced to the hourly rate awarded to Ms. Birch and Ms. Harstad. *Id.* The Court disagrees. Neither Birch nor Harstad, nor any attorney at their firm, has experience practicing before the United States Supreme Court. Dkt. 164, ¶ 23. Consequently, Fuller's counsel associated with Professor Schnapper in order to obtain competent and efficient counsel in the course of her representation before the Supreme Court. *Id.*

Professor Schnapper has significant experience practicing in the Supreme Court. Dkt 163-6. Professor Schnapper's hourly rate of $750.00 is lower than the $1,000 hourly rate typically charged by attorneys with specialized experience in Supreme Court litigation. Dkt. 163-6, ¶ 9. The Court finds no reason to doubt the veracity of Professor Schnapper's asserted market rate. Accordingly, the Court finds that the hourly rate requested by Fuller

on behalf of Professor Schnapper is reasonable and will use the rate of $750 per hour when calculating his hours.

### 2. Adjustments to the Initial Lodestar Calculation

Before detailing the initial lodestar calculation, the Court must address two issues. First, IDOC argues that Fuller has waived her ability to obtain fees related to her Ninth Circuit appeal. Dk. 172-1, at 11. IDOC asserts that Fuller failed to file a timely motion with the Ninth Circuit as required by the Ninth Circuit. *Id*. Ninth Circuit Rule 39-1states:

> Absent a statutory provision to the contrary, a request for attorneys' fees shall be filed no later than 14 days after the expiration of the period within which a petition for rehearing may be filed, unless a timely petition for rehearing is filed. If a timely petition for rehearing is filed, the request for attorneys fees shall be filed no later than 14 days after the Court's disposition of the petition.

9th Cir. R. 39-1.6. IDOC is correct that Fuller did not file a request for attorneys' fees with the Ninth Circuit. Fuller's application for attorneys' fees and expenses incurred on appeal should have been filed with the Clerk of the Ninth Circuit Court of Appeals. Ninth Circuit Rule 39–1.8 authorizes the court of appeals to transfer a *timely-filed* fees-on-appeal request to the district court for consideration, but the decision to permit the district court to handle the matter rests with the court of appeals. *Cummings v. Connell*, 402 F.3d 936, 948 (9th Cir. 2005), amended, No. 03-17095, 2005 WL 1154321 (9th Cir. May 17, 2005).

In the absence of such a transfer, the district court is not authorized to rule on the request for appellate attorney's fees. *Id.* (citing *Martin v. Nickels & Dimes, Inc.*, 804 F. Supp. 83 (D. Hi.1992)). As it has not received authorization from the court of appeals to handle the attorneys' fees incurred on appeal, the Court finds that it does not have the

authority to award Fuller's attorneys' fees incurred before the Ninth Circuit.[4] This will result in a reduction of $197,810.50.

Second, Fuller argues that she is entitled to an enhancement for delay of payment. Dkt. 163, at 16–17. "[I]n appropriate cases, the district court may adjust the 'presumptively reasonable' lodestar figure based upon the factors listed in *Kerr v. Screen Extras Guild, Inc. . . . .*" *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1158 (9th Cir.2002) (quoting *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir.1993)). The *Kerr* factors are: 1) the time and labor required; 2) the novelty and difficulty of the questions involved; 3) the skill requisite to perform the legal service properly; 4) the preclusion of other employment by the attorney due to acceptance of the case; 5) the customary fee; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or the circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation, and ability of the attorneys; 10) the undesirability of the case; 11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Kerr*, 526 F.2d at 70. "The court need not consider all . . . factors, but only those called into question by the case at hand and necessary to support the reasonableness of the fee award." *Cairns*, 292 F.3d at 1158 (citing *Kessler*

---

[4] Fuller argues that she could not have requested fees from the Ninth Circuit because she was not yet the prevailing party. The Court is skeptical of Fuller's analysis on this topic (because the cases cited in support have widely varying facts) but notes that even in the cases Fuller cited—in which the Ninth Circuit indeed found a fee award would be premature and transferred the request to the district court—the party in question *had still filed a timely request before the Ninth Circuit*. Additionally, Fuller seems to suggest that *Martin* supports the idea that this Court could transfer her request for attorney fees incurred on appeal to the Ninth Circuit, and that in turn, the Ninth Circuit could transfer the matter back. Again, the facts and posture of that case are not analogous to the present matter, but even if they were, that party also made a *timely request*. In essence, the "prevailing party" outcome (at either the Circuit or District level) or whether a district court can transfer a request back for attorneys' fees incurred before the Ninth Circuit back to the Ninth Circuit is irrelevant as Fuller never filed a request before the Ninth Circuit in the first place. Simply put: Fuller's request is already time-barred.

*v. Assocs. Fin. Servs. Co. of Hawaii*, 639 F.2d 498, 500 n. 1 (9th Cir.1981)).

In adjusting an award, however, the district court must focus on the *Kerr* factors "that are not already subsumed in the initial lodestar calculation." *Morales v. City of San Rafael*, 96 F.3d 359, 363–64 (9th Cir.1996) opinion amended on denial of reh'g, 108 F.3d 981 (9th Cir.1997). Factors one through four and six are considered subsumed in the lodestar calculation. *Id.* at 364 n. 9. Those *Kerr* factors not subsumed in the lodestar calculation, therefore, include: "(5) the customary fee, . . . (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases." *Id.*; *Kerr*, 526 F.2d at 70; *see also Graves v. Arpaio*, 633 F. Supp. 2d 834, 842 (D. Ariz. 2009) aff'd, 623 F.3d 1043 (9th Cir.2010).

Fuller argues that an enhancement is appropriate due to the delay in payment and the undesirability of this case. Dkt. 163, at 16–17. Specifically, Fuller requests an enhancement of either an additional 10-15% of the total amount awarded, or the retroactive application of her attorneys' current hourly rates to the time billed. Dkt. 163, at 18. The Supreme Court has recognized that an enhancement for delay in payment by the application of current rather than historic hourly rates may be appropriate. *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 284 (1989).

IDOC does not contest that an enhancement for delay of payment is permissible. Dkt. 172-1, at 14-15. Instead, IDOC contends that Fuller has not met her burden of establishing the requested enhancement is appropriate. Dkt. 172-1, at 14. IDOC also argues

that an enhancement would result in an inappropriate windfall to Fuller's counsel. Dkt. 172-1, at 15. The Court disagrees. Fuller's counsel has spent over seven years litigating her claims—in district Court, on appeal to the Ninth Circuit, through IDOC's motion for certiorari to the United States Supreme Court, and a nine-day jury trial. Dkt. 164, ¶ 2. Fuller's counsel attests that the substantial resources required in this case limited their ability to take on additional cases for litigation. Dkt. 164, ¶ 18; Dkt. 163-4, ¶¶ 7-8; Dkt. 163-5, ¶ 8. These opportunity costs, coupled with the reality of delayed payment, underscores the undesirability of cases like this one. Therefore, the Court finds that an enhancement is warranted. The Court will apply Fuller's counsels' current hourly rates to the work performed at a lower rate.[5]

At the provided rates and the total billed hours, excluding the time spent on the Ninth Circuit appeal but including the awarded enhancement, the initial lodestar calculation results in an award amount of $996,351.77 as summarized below:

| | |
|---|---:|
| Fuller's initial request: | $1,075, 283.77 |
| Reduction for Ninth Circuit Fees: | $197,810.50 |
| Addition for enhancement at current rates: | $118,878.50 |
| Total lodestar: | $996,351.77 |

## B. IDOC's Objections

IDOC contends that there should be various reductions or exclusions to the amount of the award, raising numerous objections to hundreds of entries. Dkt. 172-1. The Court

---

[5] Plaintiff's counsel's current hourly rate it $325 an hour. The Court has recalculated the necessary time entries to adjust for the current rate, which totals a $118,878.50 enhancement.

will address the key disputes between the parties below.

*1. Billing Method on Motion for Attorney Fees and Costs*

IDOC first argues for a complete denial of Fuller's request for fees incurred preparing the instant Motion for Attorney Fees and Costs, beginning on March 4, 2019, which totaled $13,332.35 at the time IDOC's response brief was filed. Dkt. 172-1, at 6; Dkt. 169-1, ¶ 6. Fuller subsequently updated her request for fees at the time of her reply, adding $27,724.00, to account for the additional fees incurred following the initial filing of her Motion for Attorney Fees and Cost. Dkt. 178, at 4; Dkt. 178-1, at 1-2.

IDOC argues that Fuller's counsel used an unfair tactic in producing their billing sheets by organizing their time by attorney, rather than listing the work performed by each timekeeper chronologically. Dkt. 172-1, at 5. Fuller's counsel contends that this was not a tactic and is simply the way their firm's billing program defaults when pulling historical billing information. Dkt. 178, at 3. IDOC counters that this practice unduly complicated their review of the billing records, causing Defense counsel to devote additional time to the analysis of Plaintiff's fee claims. *Id.* at 5-6. However, IDOC could have, but did not, request Fuller's counsel provide chronological billing. Dkt. 178-1, ¶ 5.

The Court has reviewed the billing records and finds that Fuller's counsels' billing sheets are sufficient and do not warrant a reduction as a quasi-sanction for any "unfair tactic" utilized. Even if there were a more reader-friendly way Fuller's counsel could have produced the records, wholesale exclusion of the associated fees is not the answer. Again, it appears all IDOC's counsel had to do was ask for reformatted copies and Fuller's counsel would have obliged. In sum, the Court will award Fuller $27,724.00 for the costs incurred

MEMORANDUM DECISION AND ORDER - 10

from April 5 through May 16.[6]

*2. Dismissed Claims*

IDOC next argues for a reduction to Fuller's requested fees, based on the fact that certain claims were dismissed during the pendency of this litigation. Dkt. 172-1, at 6-7. Specifically, IDOC requests that the fees associated with the dismissed claims, which total $125,026.75, be denied in full. Dkt 172-,1 at 8. Additionally, IDOC requests a 30% reduction to fees charged for the work that involved both the dismissed claims and the meritorious claim ($106,751.50), which would total a $32,025.46 reduction. *Id.*[7]

While IDOC is correct that a reduction of fees may be appropriate for dismissed claims, such a reduction is appropriate only "where the plaintiff's claims are based on different facts and different legal theories." *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 789, 109 S. Ct. 1486, 1492, 103 L. Ed. 2d 866 (1989).

Therefore, before the Court can award any reduction of fees, it must first determine if the plaintiff's unsuccessful claims were unrelated to the successful claim. *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 904 (9th Cir. 1995). Related claims are those that involve a common core of facts or will be based on related legal theories, while unrelated claims are "distinctly different and based on different facts and legal theories."

---

[6] This amount is included in the Court's initial lodestar calculation.

[7] It is also somewhat difficult to accept IDOC's summary of which fees are recoverable and which fees are not. While they "color-coded" and categorized each billed entry, this was based on their subjective opinion which may or may not be a correct reflection of the actual work done. Furthermore, while Fuller's counsels' records are fairly detailed, it is sometimes difficult, if not impossible, to determine if certain hours were expended on successful or unsuccessful claims as work would have been occurring simultaneously in many instances.

*Id.* (quoting Hensley, 461 U.S. at 434). "The test is whether relief sought on the unsuccessful claim 'is intended to remedy a course of conduct entirely distinct and separate from the course of conduct that gave rise to the injury on which the relief granted is premised.'" *Id.* at 1141 (quoting *Mary Beth G. v. City of Chicago*, 723 F.2d 1263, 1279 (7th Cir. 1983)). If the unsuccessful and successful claims are related, the court must then evaluate the "significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Thorne v. City of El Segundo*, 802 F.2d 1131, 1141 (9th Cir. 1986) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983)).

In this case, Fuller originally sued IDOC, Brent Reinke, and Henry Atencio. Dkt. 1. In her Complaint, Fuller alleged six separate causes of action against these defendants. *Id.* Early on, the Court granted Fuller's motion to withdraw certain claims and granted in part IDOC's motion for partial summary judgment. This decision resulted in four remaining claims: (1) a Title VII hostile work environment claim against IDOC; (2) a Title VII gender discrimination claim against IDOC; (3) a 42 U.S.C. § 1983 claim alleging equal protection violations against Reinke and Atencio; and (4) an intentional or negligent infliction of emotional distress claim against Atencio. Dkt. 19. Later, on cross motions for summary judgment, the Court granted IDOC's motion, denied Fuller's Motion, and entered Judgment in favor of IDOC. Dkt. 82. On appeal, the Ninth Circuit reversed the district court on its finding relative to Fuller's Title VII hostile work environment claim against IDOC, but affirmed the district court on the remaining claims. Dkts. 90, 91.

As a threshold matter, the Court notes that reliance on hindsight justification is misplaced. While Fuller voluntarily dismissed certain claims (arguably conceding they

would prove "unsuccessful"), she could not know which claims were going to be successful or not until a finder of fact made certain determinations. Here, Fuller's successful and unsuccessful claims involve a common core of facts. Each related to IDOC's deficient conduct. Each cause of action involved conduct that gave rise to the injury upon which the relief requested was premised. While certain claims proved more successful than others (at various stages), each was factually and legally intertwined with the other claims and relied on related theories of liability. Upon review, the Court finds that the unsuccessful and successful claims were related.

Furthermore, it is not difficult to calculate the "overall relief" obtained by Fuller in this case. There is no question that Fuller was the overall prevailing party—after all, a jury awarded her $1,800,000 in damages following trial. She was also successful on certain aspects of appeal, and arguably[8] in her opposition to IDOC's petition for certiorari before the United States Supreme Court. That said, Fuller technically only prevailed on one of her original six claims, or one of the four claims raised on appeal.

The Court, however, finds significant the claim upon which Fuller ultimately prevailed. The Ninth Circuit wrote an extensive opinion on Fuller's Title VII hostile work environment claim and the associated jury award was substantial. Many of the fees incurred on the claims that were dismissed throughout the case were co-mingled with the prevailing claim. This makes it difficult for the Court to parse through, or delineate between hours

---

[8] Because the United States Supreme Court takes only a limited number of cases per year, it is difficult to say that Fuller was the driving force behind the denial of certiorari as opposed to some other reason—even something as simple as scheduling. In short, this factor does not weigh for, or against, Fuller.

worked on successful claims and unsuccessful claims. As the Supreme Court aptly noted: "much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims." *Hensley*, 461 U.S. at 435. "Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters." *Id.*

Here, while some of Fuller's claims were dismissed along the way, the unsuccessful and successful claims were related, she was the prevailing party, and the overall relief obtained in relation to the hours expended on the litigation was reasonable. Additionally, as was previously explained, the Court does not have the authority to award Fuller any fees incurred on appeal to the Ninth Circuit. Thus, Fuller will not receive compensation for much of the work done on the arguably "unsuccessful" claims. This penalty is sufficient, and the Court will not reduce Fuller's fees further.

### 3. Inadequate Descriptions/Block Billing

IDOC asks for an additional reduction due to "inadequate descriptions and block billing." Dkt. 172-1, at 8-9. IDOC asserts that Plaintiff's billing records are replete with block billing and inadequate description entries and request a 20% reduction based on this assertion. Dkt. 172-1, at 9. "'Block billing' is 'the time-keeping method by which each lawyer . . . enters the total daily time spend working on a case, rather than itemizing the time expended on specific tasks.'" *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 945 n. 2 (9th Cir. 2007) (quoting *Harold Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533,

1554 n. 15 (10th Cir. 1996)). Block-billing is disfavored because it "obscures the time spent on discrete legal tasks, frustrating the Court's analysis of whether the time was reasonably spent." *Latta v. Otter*, No. 1:13-CV-00482-CWD, 2014 WL 7245631, at *10 (D. Idaho Dec. 19, 2014). The Court may reduce the requested fee based on this lack of specificity. *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000) (district courts may reduce hours where requests are poorly documented).

IDOC identifies numerous entries it believes to be either block-billed or that contain inadequate descriptions. Dkt. 169-2; Dkt. 169-3; Dkt. 169-4; Dkt. 169-5; Dkt. 169-6. However, IDOC does not differentiate which entries it believes to be block-billed and which it believes contain inadequate descriptions. The Court has reviewed the time entries and finds they are sufficiently detailed to give an accurate sense of the tasks performed. The Court will not reduce the fee award based on this argument.

### 4. Clerical Tasks

IDOC also argues that any time spent on what were essentially clerical or secretarial tasks should be disallowed. Dkt. 172-1, at 10. IDOC identifies a totality of $3,107.25 worth of clerical time. *Id.*  After reviewing the entries IDOC identified as clerical work, Fuller withdrew her request for certain entries totaling $801.00. Dkt. 178-1, ¶ 7. The Court has reviewed the time entries and does not find that a reduction beyond that agreed to by Fuller is necessary. The Court declines to reduce Fuller's fee award for the remaining entries identified as clerical by IDOC.

### 5. Overstaffing or Duplicative Work

IDOC contends that the fee award should be reduced by an additional $100,152.50

for time that involved "overstaffing and/or duplicative work" by counsel and their staff. Dkt. 172-1, at 10. IDOC also argues that the fee award should be reduced by an additional $31,644.50 for fees they deem unnecessary or excessive. Dkt. 172-1, at 10.  IDOC, however, makes these arguments only generally.[9] "When such attacks are so generally formulated, the court must remind the objecting party that the party entitled to attorney fees obtained a successful result based on the work expended." *LaPeter v. Canada Life Ins. Co. of Am.*, No. CV06-121SBLW, 2009 WL 1313336, at *4 (D. Idaho May 11, 2009). That said, in her reply, Fuller agreed to a reduction of $1,623.50 for time related to preparing for focus groups. Dkt. 178, at 7-8. The Court has reviewed the other time entries and does not find any that appear duplicative or suggest the use of overstaffing. The Court further concludes that the time expended by the attorneys in this case was reasonably necessary to obtain a successful result for their client—Fuller. Therefore, the Court will not reduce the fee award beyond the amount agreed upon by Fuller.

### 6. Supreme Court Fees

IDOC next argues that any fees award to Professor Schnapper, who assisted Fuller in preparation of her United States Supreme Court brief, should be excluded because there is no evidence that an attorney-client relationship existed between Professor Schnapper and Fuller.  Dkt. 172-1, at 12.

As the Court explained above, Professor Schnapper is a Supreme Court lawyer who assisted Fuller with her opposition to IDOC's Petition for Writ of Certiorari. Dkt. 164, ¶

---

[9] IDOC provides no explanation as to the basis of these objections.

22-23. Professor Schnapper filed the Brief in Opposition as "Counsel of Record" for Fuller. *Idaho Dept. of Corrections v. Fuller*, 2018 WL 1256177 (U.S.). Fuller's local counsel had her advice and consent when they associated with Professor Schnapper for purposes of the Supreme Court appeal. Dkt. 178-1, ¶ 10. The Court finds sufficient evidence to conclude that an attorney-client relationship existed between Fuller and Professor Schnapper and will not exclude fees based on this argument.

In the alternative, IDOC requests an exclusion of Professor Schnapper's fees as they were not reasonably and necessarily incurred. Dkt. 172-1. IDOC contends that because Plaintiff was not *required* to submit an opposition to the writ of certiorari, Professor Schnapper's fees constitute unnecessary work and should be excluded.

Although IDOC is correct that Fuller's response to the writ of certiorari was not mandatory, that does not mean it was unreasonable. Furthermore, it was IDOC's decision to petition the Supreme Court for certiorari that caused these hours to be expended. Denying fees for an appropriate opposition to a writ for certiorari could disincentivize lawyers to zealously advocate for their clients. Therefore, the Court will not exclude the fees for time reasonably expended on the response.

IDOC also argues that all fees arising from time spent by Fuller's local counsel pertaining to the opposition to the writ of certiorari should be denied as unnecessary, excessive, and duplicative. Dkt. 172-1, at 13. The Court has reviewed Fuller's records regarding the Supreme Court briefing and finds the time spent by local counsel was reasonable.  The Court will not exclude the fees incurred for time spent on that matter—by Schnapper or local counsel.

*7. Mediation*

IDOC next alleges that Fuller took an unreasonable approach during attempts at mediation and, as a result, she should not recover fees incurred as a result of the mediation—including those incurred in anticipation of, and during, mediation. Dkt. 172-1, at 13–14.

In short, IDOC claims that Fuller failed to negotiate in good faith when she ended the mediation. *Id.* at 13. Fuller asserts that her decision to end the mediation was based upon discussions with the mediator, who indicated that given the parties' respective position, the parties would not be able to settle the matter through mediation unless Fuller was willing to accept less than $300,000, an amount Plaintiff did not feel was sufficient. Dkt. 178-1, ¶ 11; Dkt. 17,8 at 8.

> The Court recently dealt with a similar accusation of bad faith and noted that:
>
> Idaho District Local Rule 16.4(b)(3)(F) states that "all parties and their counsel must participate in the mediation process fully, reasonably, and in good faith," however, there is no definition of good faith. Were the Court to rule that the failure to settle—or more narrowly, the failure to present a counteroffer—constitutes "bad faith," the Court would open itself to a subjective inquiry in each case, and unnecessarily inject itself into a process where it need not—and indeed, should not—be.

*Layton v. Eagle Rock Timber, Inc.*, No. 4:17-CV-00259-DCN, 2018 WL 5499541, at *3 (D. Idaho Oct. 29, 2018). Further, "there is no requirement that the parties settle their case when they attend mediation." *Id.* "While the Court does expect each party in a lawsuit to engage in meaningful alternative dispute resolution and participate in 'good faith,' this is a subjective standard and the Court will not award fees based upon one party's interpretation of that standard." *Id.* Here, the Court will not reduce Fuller's fees simply

because IDOC subjectively believes she acted in bad faith when she ended the mediation.

   *8. Expert Fees*

   Next, IDOC argues that Fuller's expert fees requested should be significantly reduced for several reasons. Dkt. 172-1, at 16. First, IDOC claims that by statute, Fuller's request for expert witness travel expenses must be denied in its entirety. *Id.* Fuller has requested travel expenses for Dr. Louise Fitzgerald's travel costs incurred prior to trial when Dr. Fitzgerald traveled to Idaho to conduct testing of Fuller, as well as her travel costs to attend trial. Dkt. 163, at 19; Dkt. 164, ¶ 26; Dkt. 164-6. Dr. Fitzgerald's travel costs to attend trial are, to an extent, recoverable under 28 U.S.C. § 1821.[10] However, the Court does not have authority to include expert travel expenses *as part of its award of attorney fees*.[11] 42 U.S.C. § 1988(c) provides for an award of reasonable expert fees; it does not provide for an award of travel expenses. Therefore, the Court will reduce the fee award for Dr. Fitzgerald's expenses related to travel for testing and for her trial travel expenses that are not awarded in the bill of costs, which totals a reduction of $1,684.07.[12]

   IDOC also raises several general objections to Fuller's requested expert fees.[13]

---

[10] "[A] witness in attendance at any court of the United States . . . shall be paid for the actual expenses of travel on the basis of the means of transportation reasonably utilized and the distance necessarily traveled to and from such witness's residence by the shortest practical route in going to and returning from the place of attendance . . . ." 28 U.S.C.A. § 1821. Fuller has requested $1,676.25 for trial travel expenses in her Bill of Costs. For reasons explained below, the Court is awarding $1,623.50 in the Bill of Costs related to Dr. Fitzgerald's travel.

[11] 42 U.S.C. § 1988(c) provides for an award of expert fees; it does not provide for an award of expert travel expenses.

[12] Fuller requested $1,211.00 for travel costs unrelated to trial. Fuller also requested an additional $473.07 for travel costs related to trial but not included in her Bill of Costs.

[13] For example, IDOC requested a $6,050 reduction for work done by Dr. Fitzgerald's associates; costs it

MEMORANDUM DECISION AND ORDER - 19

Dkt. 172-1, at 16-18. The Court has reviewed IDOC's objections and finds IDOC's arguments to be without merit. However, Fuller separately agreed to an overall reduction of $2,200 in Dr. Fitzgerald's fees for various reasons. Dkt. 178-1, ¶ 13. The Court will not further reduce the fee award beyond the amount agreed to by Fuller.

IDOC also argues that Dr. Fitzgerald's fees for all work performed, except for her testimony at trial on February 12, 2019, should be reduced because she conducted work related to the dismissed claims, and because she conducted work related to opinions that she ultimately did not offer at trial. Dkt. 172-1, at 18. As the Court explained above, it declines to issue any reduction based on the dismissed claims. Furthermore, Fuller could not have known the permissible scope of Dr. Fitzgerald's testimony prior to this Court's ruling on the Motion in Limine regarding Dr. Fitzgerald's testimony, and its rulings on objections made at trial. Dkt. 134. Therefore, the Court finds that the time spent by Dr. Fitzgerald was reasonable and will not grant a reduction based on this argument. The Court will award $44,146.20 in expert fees.[14]

After applying the appropriate reductions to the initial lodestar amount of $1,075,283.77, the result is a total attorneys' fees award of $990,043.20 as outlined below:

Fuller's initial request:                                                $1,075, 283.77

Adjusted lodestar[15]:                                                $996,351.77

---

deemed generally duplicative. Dkt. 172-1, at 16. Similarly, IDOC requested an additional reduction to Dr. Fitzgerald fees for trial preparation, deeming them generally excessive. Dkt. 172-1, at 17. The Court has reviewed the time entries and does not find any that appear to be duplicative or excessive.

[14] This amount is included in the Court's initial lodestar calculation.

[15] See Section III(A)(2).

| | |
|---|---|
| Reduction for clerical task (withdrawn by Fuller): | $801.00 |
| Reduction for focus groups (withdrawn by Fuller): | $1,623.50 |
| Reduction for expert travel expenses: | $1,684.07 |
| Reduction for other expert fees (withdrawn by Fuller): | $2,200.00 |
| TOTAL award for attorney fees: | $990,043.20 |

## C. Expenses and Costs

Federal Rule of Civil Procedure 54(d) "generally provides for an award of costs to the prevailing party. A Rule 54(d)(1) award includes taxable costs, and a Rule 54(d)(2) award of attorney's fees may include 'nontaxable expenses.'" *Gomez v. Reinke*, 2008 WL 3200794, at *16 (D. Idaho 2008).

Fuller asks that the Court award non-taxable costs and expenses in the amount of $10,751.34. Dkt. 163, at 20. Fuller also submitted a Bill of Costs, asking the Court to award another $13,793.84 in additional taxable costs. Dkt. 161. IDOC disputes some of the costs outlined in Fuller's Motion as well as certain costs listed in the Bill of Costs. The Court will address each in turn.

### 1. Additional Expenses and Costs

Under 42 U.S.C. § 1988, the prevailing party "may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client.'" *Dang v. Cross*, 422 F.3d 800, 814 (9th Cir. 2005) (quoting *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994)). Such out-of-pocket expenses are recoverable when reasonable. *Id.* Fuller requests various out of pocket expenses and costs not sought in her motion for attorney fees. Dkt. 163, at 20.

At the outset, IDOC asserts that the Court should deny Fuller's request for her out-of-pocket expenses outright because she failed to produce actual receipts and because she did not provide evidence that the costs sought are typically charged to a client—as opposed to being treated as overhead. The District of Idaho has never *required* actual receipts for an award of costs. While receipts would be acceptable and helpful to the Court, the rule outlines that a motion for fees "must be accompanied by an affidavit of counsel . . . [that will] assist the Court in determining the dollar amount of fee to be allowed." Dist. Idaho Loc. Civ. R. 54.2(b). Second, Fuller identified in her motion that the specific fees she requested are "non-overhead expenses that Plaintiff's counsel [] billed to Ms. Fuller." Dkt. 163, at 19. The Court finds IDOC's argument unpersuasive.

IDOC next takes issue with specific costs and proffers various arguments against the Court granting the same. Dkt. 169, at 19-24. The Court has carefully reviewed the objections raised, the fees requested (and the rational for requesting those fees) and finds IDOC's arguments unavailing.[16] The exception to this general finding is the fees associated with appellate proceedings before the Ninth Circuit and the Supreme Court. As previously discussed, this Court does not have the authority to award any costs not explicitly awarded by the Ninth Circuit. Accordingly, Fuller's request for Ninth Circuit untaxed costs ($212.56) as well as research costs ($302.92) and travel costs ($1,082.60) associated *solely* with the Ninth Circuit Appeal must be omitted. *See* Dkt. 164-7. The Ninth Circuit taxed

---

[16] By way of illustration, IDOC asserts that Fuller should not be allowed to recover $58 for serving Henry Atencio because she "did not prevail on her claims against [him]." Dkt. 169, at 19. This argument is meritless. While Fuller did not ultimately prevail on her claims against Atencio, there is no connection between that determination—that took place many months into the case—and the decision to serve him at the outset. Clearly as a named party [originally], Fuller had to serve Atencio.

costs—awarded by the Ninth Circuit itself (*see* Dkt. 96)—will be awarded.

In like manner, it is not apparent that this Court has the authority to award costs incurred for the printing of materials for the United States Supreme Court.[17] *See, e.g., Mims v. Arrow Fin. Servs., LLC*, 900 F. Supp. 2d 1336, 1342 (S.D. Fla. 2012) ("Absent a specific remand for consideration of costs, a district court does not have jurisdiction to award costs that are for the appellate courts to consider in the first instance.") *Kraebel v. New York City Dep't of Hous. Pres. & Dev.*, No. 90 CIV. 4391 (CSH), 2003 WL 1846332, at *1 (S.D.N.Y. Apr. 8, 2003) ("Plaintiff's printing costs in opposing defendants' petition for a writ of certiorari, [] [were] properly correctly disallowed."); *Merk v. Jewel Food Stores,* 1995 U.S. Dist. Lexis 9316, at *13 (N.D. Ill. June 29, 1995) (denying printing and copying costs incurred in preparing petition for certiorari under section 1920). Without clear authority to do so, the Court will not award Fuller's printing costs for her United States Supreme Court brief.

In Summary, Fuller's out-of-pocket expenses are awarded as follows:

| | |
|---|---:|
| Fuller's requested costs and expenses: | $10,751.34 |
| Reduction for various Ninth Circuit costs: | $1,598.08 |
| Reduction for printing SCOTUS brief: | $1,527.00 |
| Total additional expenses and costs: | $7,626.26 |

---

[17] The Court has already determined that the *attorney's fees* related to Supreme Court work are recoverable; however, due to the uncertainty of whether a district court has the discretion or authority to award ancillary costs relative to Supreme Court work, the Court will not grant these fees.

2. *Bill of Costs*

In her Bill of Costs (Dkt. 161), Fuller seeks costs in the amount of $13,793.84. These costs are comprised of clerks and service Fees ($855.00), trial transcripts ($251.85), deposition costs ($9,942.75), witness fees ($2,623.88), and copies ($120.36). Dkt. 161

IDOC begins by, again, wholesale objecting to Fuller's request, alleging that Fuller's Bill of Costs does not comply with 28 U.S.C. § 1924, and the requirement that a Bill of Costs must be supported by an affidavit or verification. The Bill of Costs itself includes a certification section certifying that the fees requested are correct and necessary. Fuller alleges this is sufficient; however, in an abundance of caution, she also supplemented her Bill of Costs with an actual affidavit of counsel verifying the fees requested were correct and necessarily performed. Dkt. 167-1. The Court finds the Bill of Costs is sufficiently supported and will consider the same.

IDOC goes on to specifically contest two categories of fees in Fuller's Bill of Costs: witness fees and copying expenses. The Court will address each argument.

a. <u>Witness Costs</u>

First, IDOC argues that Fuller did not calculate the "shortest practical route" for many of the witnesses who appeared at trial. Supplying the Court with google map summaries, IDOC asserts that Fuller's witnesses' mileage calculations should be capped at the shortest distance possible from their respective residences to the Courthouse. IDOC recalculated each witness's mileage and argues each should be reduced accordingly. The court disagrees. The variations in the distances calculated could be attributed to traffic, construction, a different search engine or mapping algorithm, or any number of factors.

More importantly, however, the de minimis change in overall fees is hardly "excessive."[18] That said, Fuller did incorrectly calculate each witness's mileage based on the assumption that the mileage allowance prescribed by the Administrative of General Services ("GSA") was $0.59 per mile, rather than the current rate of $0.58 per mile.[19] Again, while hardly a significant change,[20] Fuller must utilize the correct government rate.

Relatedly—and as previously eluded to—IDOC contests that Fuller should not be allowed to recover any of Dr. Fitzgerald's flight and hotel costs. First, IDOC asserts the costs must be denied as they are not supported by receipts. Again, "a receipt or other evidence of actual costs" is all that is required. 28 U.S.C. § 1821(c)(1). Fuller has supplied the Court with Dr. Fitzgerald's bill to her which details each cost incurred. While there are arguably *better* means of showing actual costs, this is sufficient for the Court's purposes.

IDOC further objects to Dr. Fitzgerald's overall flight costs alleging they are too high. IDOC opines that had Dr. Fitzgerald booked her flights sooner, they would have been cheaper.[21] As noted above, because there is always uncertainty regarding whether a case will proceed to trial—and when during trial any particular witness will testify—*if* Dr.

---

[18] Some of the recalculations resulted in a few dollars difference (Reinke's costs, for example, went from $156.11 to $152.54) while others resulted in a few cents (Hartz expenses, for example, went from $5.66 to $5.57). The total change is approximate $13.00.

[19] https://www.gsa.gov/travel/plan-book/transportation-airfare-pov-etc/privately-owned-vehicle-pov-mileage-reimbursement-rates.

[20] Again, the total change here is less than $10.00.

[21] IDOC does not provide anything in support of the assertion that Dr. Fitzgerald booked her flights "last minute." The Court does not know when Dr. Fitzgerald booked her flights; however, as explained above, this is of little consequence.

Fitzgerald did wait to book her flight until the "last minute," such is understandable. The Court cannot take IDOC's views as to costs and timing absent supporting materials. The Court can, however, reimburse a witness for "the actual expenses of travel," 28 U.S.C. § 1821(c)(1), which is what it will do here.

IDOC also alleges that Fuller has incorrectly calculated Dr. Fitzgerald's subsistence allowance. 28 U.S.C. § 1821(d)(1) provides: "A subsistence allowance shall be paid to a witness when an overnight stay is required at the place of attendance because such place is so far removed from the residence of such witness as to prohibit return thereto from day to day." This allowance is reimbursable in an amount "not to exceed the maximum per diem allowance prescribed by the Administrator of General Services . . . for official travel in the area of attendance by employees of the Federal Government." 28 U.S.C. § 1821(d)(2). Fuller asks for $405.75 for Dr. Fitzgerald's subsistence. It is not readily apparent how Fuller calculated this amount.

In February 2019, the federal, GSA approved, per diem rate for Boise, Idaho, was $94 for lodging and $55 for meals.[22] Dr. Fitzgerald was required to stay overnight the day prior to her testimony and the day of her testimony (in case she was recalled the following day). Accordingly, Dr. Fitzgerald shall receive a subsistence allowance in the amount of $353.00 (three days and two nights of GSA per diem) rather than amount ($405.75) requested by Fuller.

---

[22] https://www.gsa.gov/travel/plan-book/per-diem-rates/per-diem-rates-lookup/?action=perdiems_report&fiscal_year=2019&city=&state=ID&zip=.

b.   Copying costs

Second, IDOC objects to Fuller's request for certain "office supplies" such as binders, binder dividers, and labels (for exhibits used at trial). This line item in the District of Idaho's Bill of Costs is reserved for copies of papers and exhibits. The Court will award Fuller the copying charges and the costs of labels which were necessary for trial submissions and exhibits. Costs associated with binders and binder index dividers will not be reimbursed as these are more accurate categorized and general office supplies.

In summary:

Fuller's requested witness fees:                                              $2,623.88

    Reduction for correct mileage rate:                          $9.42

    Reduction for correct per diem for Dr. Fitzgerald:          $52.75

    Total witness fees:                                      $2,561.71

Fuller's requested copying fees:                                  $120.36

    Reduction for office supplies:                              $43.66

    Total copying fees:                                          $76.70

## ALLOWED COSTS

Undisputed Costs:

    Clerks and Service Fees:                                  $855.00

    Trial Transcripts:                                          $251.85

    Deposition Costs:                                        $9,942.75

Disputed Costs:

    Adjusted Witness Fees:                                    $2,561.71

Adjusted Copying Fees:          $76.70

TOTAL BILL OF COSTS:          $13,688.01

## IV. CONCLUSION

After a full and exhaustive review of the parties' submissions in this case, the arguments presented, and all relevant caselaw, the Court awards Fuller the following costs and fees:

Attorney fees:          $990,043.20

Other non-taxable expenses and costs:      $7,626.26

Bill of Costs:          $13,688.01

## V. ORDER

The Court HEREBY ORDERS:

1. Fuller's Motion for Attorneys' Fees and Non-Taxable Costs (Dkt. 162) is GRANTED in PART and DENIED in PART as outlined above.

2. The Court awards Fuller attorneys' fees in the amount of $990,043.20 and non-taxable costs and fees in the amount of $7,626.26.

3. The Clerk of the Court is directed to tax additional costs in the amount of $13,688.01.

4. The Court will enter an Amended Judgment reflecting this award.

5. IDOC has 30 days to comply with this Order.

DATED: November 26, 2019

David C. Nye
Chief U.S. District Court Judge